IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Phyllis A. Huster, | ) |
| | ) Judge |
| Plaintiff, | ) |
| | ) Magistrate Judge |
| v. | ) |
| | ) CIVIL ACTION NO. |
| J2 Global Communication, Inc., | ) |
| Advanced Messaging Technologies, Inc., | ) |
| Unified Messaging Solutions, LLC, | ) |
| Acacia Patent Acquisition LLC, and | ) |
| Charles R. Bobo II, | ) |
| | ) |
| Defendants. | ) |

**VERIFIED COMPLAINT FOR CORRECTION OF INVENTORSHIP
OF PATENTS RELATING TO MDL SUIT NO. 2371,
Pending in this Court on Master Docket No. 12-C-6286**

1. This action arises under 35 U.S.C. §256 et seq., the Patent Laws of the United States, to correct the inventorship of nine U.S. Patents, Nos. 5,675,507 (i.e., hereinafter, "the '507 Patent"), 5,870,549, 6,350,066, 6,564,321, 6,857,074, 7,895,306, 7,836,141, 7,895,313, and 7,934,148 (the "patents in suit"), most of which are asserted in the pending MDL suit.

2. Plaintiff, Phyllis A. Huster, is an individual, a resident of Seattle, Washington, residing at 822 3rd Ave. N, #5, Seattle, WA 98109.

3. Defendants J2 Global Communication, Inc., Advanced Messaging Technologies, Inc. ("AMT"), and Unified Messaging Solutions, LLC ("UMS") are related companies, all operating under the direction of J2 Global, a Delaware corporation with offices at 6922 Hollywood Boule-

vard, Suite 500, Los Angeles, CA 90028.

4. Acacia Patent Acquisition LLC, is an independent company, publically traded, registered in Delaware and having a principal place of business at 500 Newport Center Dr., 7th Fl, Newport Beach, CA 92660.

5. AMT is assignee of all the patents here in suit, by various assignments to it in May 2010. UMS is lead plaintiff in pending Multi-District Litigation assigned to this Court and now undergoing discovery and pre-trial matters in case no. MDL 2371, Master Docket No. 12-C-6286, captioned IN RE: UNIFIED MESSAGING SOLUTIONS LLC PATENT LITIGATION ("the MDL case").

6. Defendant Charles R. Bobo II is an individual, last known as residing at 569 Elmwood Dr. NE, Atlanta, GA 30306-3641. He is named incorrectly as sole inventor and patentee on each of the patents here in suit, whereas he did not invent or only co-invented the subject matter claimed in each such patent.

7. Plaintiff claims sole inventorship instead of, or co-inventorship with, the solely named inventor, Charles R. Bobo II, in each of the patents in suit here and in the MDL case. She herein seeks the Court's Declaration of such sole or co-inventorship under 35 USC §256 and a direction to the United States Patent Office for amendment of inventorship of the patents here in suit in view of the proofs to be made herein.

8. Ms. Huster was omitted from being named as sole or a co-inventor on the patents here in suit by Mr. Bobo and his patent counsel with no deceptive intention on her part.

9. The CEO of J2 (then JFax) approached Ms. Huster in 1999 and inquired of her coming to work for the company, referring then to her work at NetOffice, Inc., in 1994 (see *infra*). J2, UMS,

and AMT attorneys in California later made an offer to Ms. Huster to settle her present co-inventorship claim. She rejected that offer in April of 2012. That offer has not been renewed.

## THE FACTS OF PLAINTIFF'S INVENTORSHIP OR CO-INVENTORSHIP

10. Starting in 1991, while consulting on communications technologies with the Emory University Police Department in Atlanta, Plaintiff Huster built a Mac based system to manage police incident reports. In 1993, Ms. Huster identified a need for detectives to be able to share faxes in digital form easily and began studying ways to modify her system to solve this problem. In 1994, on her own time, she conceived the idea of transmitting and storing telefax messages digitally, via e-mail rather than as packets via the switched telephone network, to afford wider access to information provided initially by telefax. On her own time and not for any client, after July 1994 she conceived and built a prototype for a system to allow voicemail and faxes to be centrally received, stored, and then distributed using a Mosaic Internet browser to facilitate one or more people's access to the information in those faxes and voicemails. Ms. Huster then developed extensive experience in wireless devices, browsers, and personal data assistants ("PDAs"); she has built eight commercially deployed applications for Atlanta businesses.

11. Charles R. Bobo II, currently named as sole inventor of each and all of the patents in suit, in December 1994 operated NetOffice, Inc. He then retained Ms. Huster as a consultant and later a shareholder but not ever as an employee. No employment agreement was ever signed between NetOffice, Inc. and Ms. Huster, and Ms. Huster never received pay as an employee of NetOffice, Inc. She did, on December 31, 1994, receive stock in NetOffice, Inc. She received compensation occasionally as an outside consultant via her independent consulting firm, Mobile Intelligence, during her time of working with NetOffice, Inc., and Mr. Bobo.

12. Mr. Bobo in 1994 was a Lotus Notes administrator for the Coca Cola Company; he had not developed commercial software or applications. He was not familiar with TCP/IP networking, web server, or telephony technology, but he offered to and did introduce Ms. Huster to Coca Cola executives; he attended meetings where Ms. Huster discussed her Fax over Web prototype system, but he did not contribute apart from setting them up. Mr. Bobo was able to write code at Ms. Huster's direction.

13. By the fall of 1994 Ms. Huster's Mac computer was set up as a TCP/IP server and was able to receive and transmit faxes via the Internet, the central focus of the '507 and the '066 patents in suit. Mr. Bobo abandoned his work toward sending faxes over email by late 1994, due to bandwidth limitations of about 4 MB per message, in favor of Ms. Huster's concept of using TIFF viewers in browser windows to receive and view faxes of any size.

14. Ms. Huster and Mr. Bobo discussed filing for patent on the fax to email system. Ms. Huster prepared hand-sketched drawings of her fax-to-email system and provided those to a law firm recommended by a friend. Ms. Huster visited their offices on January 4, 1995, where it was agreed that she and Mr. Bobo would be named as co-inventors in the patent filing. The patent attorney at the firm, however, filed the applications which became the '507 and subsequent patents as sole inventions of Mr. Charles Bobo II, omitting Ms. Huster's name without comment, notice, or explanation, and without deceptive intention on her part.

15. Ms. Huster was not familiar in 1994 with patent prosecution formalities and did not know of declaration signatures and other requirements for filing a patent application. She trusted counsel and Mr. Bobo to keep her informed of filings and issuance of patent rights and did not suspect that her interests in the fax to email invention had been usurped by Mr. Bobo via the

counsel she had obtained.   Ms. Huster moved to Seattle and Mr. Bobo stopped communicating with her without explanation.

16. Mr. Bobo never assigned any of his claimed patent rights to NetOffice, Inc., the company that Ms. Huster owned stock in and for which she consulted.   Mr. Bobo did later assign several of his patent rights to a different company, NetOffice Solutions, LLC, at the end of 1998.

17. J2 acquired rights to the "Bobo" '507, '549, '066, '321, and '074 patents in about 2004, despite J2's knowledge then of Ms. Huster's role in inventing or co-inventing the claimed subject matter.   Ms. Huster however was then still unaware of these patents and that she had been omitted from their inventorship and ownership.

18. On information and belief, Mr. Bobo has received millions of dollars for assigning the patents here in suit to J2 and its affiliates and/or Acacia.   He may have received other monies for assigning or licensing others of his patents to others without notice to Ms. Huster. .

19. On information and belief, J2 and its affiliates have received $27 million from OpenText in April 2013 for a paid-up license under the patents now in suit.   J2 and its affiliates have received great amounts of other monies in licensing and litigation settlement fees related to the patents here in suit.

20. J2's net income increased from about $13.4 million in 2002 to about $83 million by 2010; 90% of which it admits comes from the Bobo / Huster patents.   J2 and its affiliates have aggressively pursued alleged infringers of those patents, who participate in the fax-to-email business.

21. Only after March 2010 did Ms. Huster learn, from counsel for a defendant in J2's litigation in California federal courts, of the several "Bobo" patents being asserted by J2 in infringement litigation and thus of her being omitted from inventorship and ownership of those patents.   By

January 2011, then-counsel for Ms. Huster advised J2 of her interest in pursuing her claims to inventorship and ownership; but negotiations were unsuccessful.

### MS. HUSTER'S CLAIMS OF INVENTORSHIP AND OWNERSHIP

22. Plaintiff Ms. Huster first conceived of and thus invented some or all elements of each or all claims of each of the asserted patents here in suit. Under 35 USC §256, Ms. Huster should have been named as sole inventor or as a co-inventor of each of those patents but was omitted without any deceptive intention on her part. She seeks now to be named properly or joined properly as the inventor or as a co-inventor on, and owner or co-owner of, each of the patents here in suit.

23. Each of the patents here in suit claims priority in whole or in part back to the originally-filed patent, no. '507. The '549 patent has added disclosure, but that is also derived wholly from Ms. Huster's conception and disclosure to Mr. Bobo and their counsel.

24. Significant portions of subject matter claimed in the '507 patent were first conceived in whole or in part by Ms. Huster. Ms. Huster solely invented the matters defined in claims 1-2, 7, 12-34, 36-59, and 66-70 of the '507 patent, without contribution by Mr. Bobo.

25. All of the subject matter of all the claims, nos. 1-4, of the '549 patent were first conceived in their entirety by Ms. Huster, without contribution by Mr. Bobo.

26. Significant portions of subject matter claimed in the '066 patent and its reissue patent were first conceived in whole or in part by Ms. Huster. Ms. Huster solely invented the matters defined in claims 1-4, 6-11, 14-23, 25, 26, and 29-35 of the original '066 patent and claims 1-51 and 54-57 of the reissue patent, without contribution by Mr. Bobo.

27. Significant portions of subject matter claimed in the '321 patent were first conceived in whole or in part by Ms. Huster. Ms. Huster solely invented the matters defined in claims 1-11, 13, 14, 16-38, 40-53, 55-80, and 82-87, without contribution by Mr. Bobo.

28. Significant portions of subject matter claimed in the '074 patent were first conceived in whole or in part by Ms. Huster. Ms. Huster solely invented the matters defined in claims 1-8, 11-13, 16, and 20-28, without contribution by Mr. Bobo.

29. All of the subject matter of all the claims, nos. 1-55, of the '306 patent were first conceived in their entirety by Ms. Huster, without contribution by Mr. Bobo.

30. Significant portions of subject matter claimed in the '141 patent were first conceived in whole or in part by Ms. Huster. Ms. Huster solely invented the matters defined in claims 1-11, 14, 18, 21-26, 28, 31, 32, 35-42, 46, 47, 52-57, 59, and 62-67, without contribution by Mr. Bobo.

31. All of the subject matter of all the claims, nos. 1-42, of the '313 patent were first conceived in their entirety by Ms. Huster, without contribution by Mr. Bobo.

32. Significant portions of subject matter claimed in the '148 patent were first conceived in whole or in part by Ms. Huster. Ms. Huster solely invented the matters defined in claims 1-44, 45-69, 71, 72, 74-82, 84-158, 160, 161, 164-165, 170, 171, and 174-178, without contribution by Mr. Bobo.

> Plaintiff Phyllis A. Huster states on oath that the foregoing statements of fact are known by her to be true and correct to the best of her personal knowledge, information, and belief, under penalties of perjury. Executed in Washington State this 28th day of August, 2013.
>
> _____
> Phyllis A. Huster, plaintiff

PRAYER FOR RELIEF

Plaintiff respectfully prays that the Court:

A. Declare that Plaintiff Phyllis A. Huster conceived all or parts of the subject matter defined in claims of each of the patents here in suit and that she therefore should have been named as sole inventor and owner or as a co-inventor and co-owner of each of the patents here in suit, as the proofs shall show, under 35 USC §256;

B. Order that the Director of the United States Patent Office substitute or add Plaintiff Phyllis A. Huster as sole inventor of the matter claimed in US Patents nos. 5,870,549, 7,895,306, and 7,895,313, and as first-named co-inventor of US Patents nos. 5,675,507, 6,350,066 and its reissue, 6,564,321, 6,857,074, 7,836,141, and 7,934,148, as the proofs shall show, under 35 USC §256;

C. Order that Defendants pay over to Plaintiff, Ms. Huster, at least half of all monies received by them, without offset for costs of collecting same, for all licensing and sales of rights in the patents here in suit during the time that Ms. Huster was not named as sole inventor or as a co-inventor of the patents here in suit;

D. Grant Plaintiff her fees and costs and attorney fees in this suit against the defendants, jointly and severally; and

E. Grant Plaintiff such other relief as is just in the circumstances.

Respectfully Submitted,

John R. Crossan, Counsel for Plaintiff
CROSSAN INTELLECTUAL PROPERTY LAW, LLC
444 N Michigan Avenue, #2600
Chicago, IL 60611-3903
jrc@crossaniplaw.com
312-670-6860  (offc)    312-498-2365 (cellular)
312-264-0770 (fax)

EXHIBITS TO THE COMPLAINT:

| | No. |
|---|---|
| The initial, '507 patent, cover page only | A |
| The expanded, '549 patent, cover page only | B |
| The last, '148 patent, cover page only | C |

# EXHIBIT A

US005675507A

# United States Patent [19]

## Bobo, II

[11] Patent Number: **5,675,507**

[45] Date of Patent: **Oct. 7, 1997**

[54] **MESSAGE STORAGE AND DELIVERY SYSTEM**

[76] Inventor: **Charles R. Bobo, II**, 569 Elmwood Dr. NE., Atlanta, Ga. 30306

[21] Appl. No.: **431,716**

[22] Filed: **Apr. 28, 1995**

[51] Int. Cl.⁶ .................................................. **H04N 1/00**
[52] U.S. Cl. .......................... **364/514 R**; 348/17; 358/400
[58] Field of Search .......................... 364/514 R; 348/14, 348/17; 358/400, 402, 403; 340/311.1; 395/154, 909

[56] **References Cited**

### U.S. PATENT DOCUMENTS

| | | |
|---|---|---|
| 4,106,060 | 8/1978 | Chapman, Jr. . |
| 4,918,722 | 4/1990 | Duehren et al. . |
| 5,033,079 | 7/1991 | Catron et al. . |
| 5,065,427 | 11/1991 | Godbole . |
| 5,068,888 | 11/1991 | Scherk et al. . |
| 5,091,790 | 2/1992 | Silverberg . |
| 5,115,326 | 5/1992 | Burgess et al. . |
| 5,175,762 | 12/1992 | Kochis et al. . |
| 5,247,591 | 9/1993 | Baran . |
| 5,255,312 | 10/1993 | Koshiishi . |
| 5,257,112 | 10/1993 | Okada . |
| 5,291,302 | 3/1994 | Gordon et al. . |
| 5,291,546 | 3/1994 | Giler et al. . |
| 5,317,628 | 5/1994 | Misholi et al. . |
| 5,333,266 | 7/1994 | Boaz et al. . |
| 5,349,636 | 9/1994 | Irribarren . |
| 5,479,411 | 12/1995 | Klein .................................... 370/110.1 |
| 5,483,580 | 1/1996 | Brandman et al. ........................ 379/88 |
| 5,497,373 | 3/1996 | Hulen et al. ............................ 370/79 |
| 5,526,353 | 6/1996 | Henley et al. . |

### OTHER PUBLICATIONS

Delrina Advertisement, 1994.
"Working With . . . Fax Mailbox," by Jim Cope, PCToday, Sep. 1994, vol. 8, Issue 9.
"Voice/Fax Combos," by Stuart Warren, Computer Telephony, Sep./Oct. 1994, p. 88.

*Primary Examiner*—Emanuel T. Voeltz
*Assistant Examiner*—Thomas Peeso
*Attorney, Agent, or Firm*—Geoff L. Sutcliffe; Kilpatrick Stockton LLP

[57] **ABSTRACT**

A Message Storage and Deliver System (MSDS) is connected to a plurality of DID phone lines and receives facsimile messages, voice messages, and data messages. The MSDS assigns a separate telephone number for each user of the system and can simultaneously receive more than one message for a single user. The messages are stored in memory and are also converted into appropriate hyper-text mark-up language (HTML) files. The MSDS is connected to the Internet and notifies the users with an E-mail message each time a message is received. The MSDS can also page the user so that the user receives almost instantaneous notice of the message. The users can then connect to the MSDS through the Internet and have the messages downloaded to their computers or the users can simply preview the messages stored in the MSDS. The users of the MSDS therefore have the advantage of being able to receive their messages at any time and at any location at a reasonable cost. The MSDS offers a number of options on how the messages may be sent to the user, such as several preview options available with facsimile messages. The user can also telephone the MSDS to listen to messages or to alter the service provided by the MSDS.

**70 Claims, 12 Drawing Sheets**



# EXHIBIT B

US005870549A

# United States Patent [19]

## Bobo, II

[11] Patent Number: 5,870,549

[45] Date of Patent: *Feb. 9, 1999

[54] **SYSTEMS AND METHODS FOR STORING, DELIVERING, AND MANAGING MESSAGES**

[76] Inventor: **Charles R. Bobo, II**, 569 Elmwood Dr., NE., Atlanta, Ga. 30306

[ * ] Notice: The term of this patent shall not extend beyond the expiration date of Pat. No. 5,675,507.

[21] Appl. No.: **944,741**

[22] Filed: **Oct. 6, 1997**

### Related U.S. Application Data

[63] Continuation-in-part of Ser. No. 431,716, Apr. 28, 1995, Pat. No. 5,675,507.

[51] Int. Cl.⁶ .................................................... H04N 1/413
[52] U.S. Cl. ................... **395/200.36**; 348/14; 348/17; 358/400; 358/402
[58] Field of Search ............................... 395/200.36, 154; 348/17, 14; 358/400, 402, 403; 340/311.1

[56] **References Cited**

#### U.S. PATENT DOCUMENTS

| | | |
|---|---|---|
| 4,106,060 | 8/1978 | Chapman, Jr. . |
| 4,918,722 | 4/1990 | Duehren et al. . |
| 5,033,079 | 7/1991 | Catron et al. . |
| 5,065,427 | 11/1991 | Godbole . |
| 5,068,888 | 11/1991 | Scherk et al. . |
| 5,091,790 | 2/1992 | Silverberg . |
| 5,115,326 | 5/1992 | Burgess et al. . |
| 5,175,762 | 12/1992 | Kochis et al. . |
| 5,247,591 | 9/1993 | Baran . |
| 5,255,312 | 10/1993 | Koshiishi . |
| 5,257,112 | 10/1993 | Okada . |
| 5,291,302 | 3/1994 | Gordon et al. . |
| 5,291,546 | 3/1994 | Giler et al. . |
| 5,317,628 | 5/1994 | Misholi et al. . |
| 5,333,266 | 7/1994 | Boaz et al. . |
| 5,349,636 | 9/1994 | Irribarren . |
| 5,479,411 | 12/1995 | Klein . |
| 5,483,580 | 1/1996 | Brandman et al. . |
| 5,497,373 | 3/1996 | Hulen et al. . |
| 5,526,353 | 6/1996 | Henley et al. . |
| 5,608,786 | 3/1997 | Gordon . |
| 5,675,507 | 10/1997 | Bobo, II . |

#### FOREIGN PATENT DOCUMENTS

WO 96/34341   10/1996   WIPO .

#### OTHER PUBLICATIONS

Delrina Advertisement, 1994.
"Working with . . . Fax Mailbox" PCToday by Jim Cope (Sep. 1994, vol. 8, Issue 9).
Voice/Fax Combos by Stuart Warren, *Computer Telephony*, Sep./Oct. 1994, p. 88.

*Primary Examiner*—Thomas Peeso
*Attorney, Agent, or Firm*—Geoff L. Sutcliffe; Kilpatrick Stockton LLP

[57] **ABSTRACT**

A Message Storage and Deliver System (MSDS) is connected to the public switched telephone network (PSTN) and receives incoming calls with these calls being facsimile, voice, or data transmissions. The MSDS detects the type of call and stores the message signal in a database. The MSDS is also connected to the Internet and has a hyper-text transfer protocol deamon (HTTPD) for receiving requests from users. The HTTPD forwards requests for certain files or messages to a network server which transmits at least part of the message to the HTTPD and then to the user. In addition to requests for certain documents, the HTTPD may also receive a request in the form of a search query. The search query is forwarded from the HTTPD to an application program for conducting the search of the database. The results of the search are forwarded through the HTTPD to the user. The user may then select one or more files or messages from the search results and may save the search for later reference.

**4 Claims, 18 Drawing Sheets**



# EXHIBIT C

US007934148B2

## (12) United States Patent
### Bobo, II

(10) Patent No.: **US 7,934,148 B2**
(45) Date of Patent: **Apr. 26, 2011**

(54) **SYSTEMS AND METHOD FOR STORING, DELIVERING, AND MANAGING MESSAGES**

(75) Inventor: **Charles R. Bobo, II**, Atlanta, GA (US)

(73) Assignee: **Advanced Messaging Technologies, Inc.**, Los Angeles, CA (US)

( * ) Notice: Subject to any disclaimer, the term of this patent is extended or adjusted under 35 U.S.C. 154(b) by 1090 days.

(21) Appl. No.: **11/609,003**

(22) Filed: **Dec. 11, 2006**

(65) **Prior Publication Data**

US 2007/0083614 A1   Apr. 12, 2007

**Related U.S. Application Data**

(63) Continuation of application No. 10/963,586, filed on Oct. 14, 2004, which is a continuation of application No. 10/436,798, filed on May 12, 2003, now Pat. No. 6,857,074, which is a continuation of application No. 09/840,759, filed on Apr. 23, 2001, now Pat. No. 6,564,321, which is a continuation of application No. 09/186,595, filed on Nov. 5, 1998, now Pat. No. 6,350,066, which is a continuation of application No. 08/944,741, filed on Oct. 6, 1997, now Pat. No. 5,870,549, which is a continuation-in-part of application No. 08/431,716, filed on Apr. 28, 1995, now Pat. No. 5,675,507.

(51) **Int. Cl.**
*G06F 17/00* (2006.01)
*H04M 1/658* (2006.01)
*H04N 1/00* (2006.01)

(52) **U.S. Cl.** ..... **715/208**; 358/402; 358/403; 379/88.14; 379/88.15; 715/760

(58) **Field of Classification Search** .................. 715/273, 715/760, 208; 358/402, 403; 379/88.14, 379/88.15
See application file for complete search history.

(56) **References Cited**

U.S. PATENT DOCUMENTS

4,106,060 A   8/1978   Chapman, Jr.
(Continued)

FOREIGN PATENT DOCUMENTS

AU   755321   12/2002
(Continued)

OTHER PUBLICATIONS

Kaashoek, M. Frans et al. "Dynamic Documents: Extensibility and Adaptability in the WWW", Sep. 15, 2004 Massachusetts Institute of Technology.*

(Continued)

*Primary Examiner* — Adam M Queler
*Assistant Examiner* — Tyler J Schallhorn
(74) *Attorney, Agent, or Firm* — Kenyon & Kenyon LLP

(57) **ABSTRACT**

Systems and methods are provided for storing a mark-up language file and delivering the file from a network server to a user's computer via a packet switched data network using a hyper-text transfer protocol (HTTP). The mark-up language file is stored in a storage area accessible by the network server, wherein the file contains information personal to the user. A notification is transmitted to the user's computer, wherein the notification serves to notify the user of the availability of the file. In response to a user request made in response to the notification, the mark-up language file is transmitted from the network server to the user's computer, via the packet switched data network, using the HTTP.

**178 Claims, 18 Drawing Sheets**

