**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| Phyllis A. Huster, ) | |
| ) | |
| Plaintiff, ) | No. 13-cv-06143 |
| v. ) | |
| ) | Hon. Joan H. Lefkow |
| j2 Global Communication, Inc., ) | |
| Advanced Messaging Technologies, ) | |
| Inc., Unified Messaging Solutions, LLC, ) | |
| Acacia Patent Acquisition LLC, and ) | |
| Charles R. Bobo II, ) | |
| ) | |
| Defendants. ) | |
| ) | |

**DEFENDANTS' MEMORANDUM IN SUPPORT OF MOTION TO
DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(3) AND 12(b)(6) AND TO
STRIKE REQUEST FOR DAMAGES UNDER FED. R. CIV. P. 12(f)**

Defendants j2 Global, Inc.[1] ("j2"), Advanced Messaging Technologies, Inc. ("AMT"), Unified Messaging Solutions LLC ("UMS"), Acacia Research Group LLC[2] ("Acacia") and Charles R. Bobo II ("Bobo;" collectively, "Defendants") respectfully submit this Memorandum in support of their Motion to Dismiss Plaintiff Phyllis Huster's ("Huster" or "Plaintiff") Complaint pursuant to Federal Rule of Civil Procedure 12(b)(3) on the ground that venue is improper and under Federal Rule of Civil Procedure 12(b)(6) on the ground that Plaintiff's claim is barred by laches as a matter of law, and also to strike portions of the Prayer for Relief under Federal Rule of Civil Procedure 12(f).[3]

## INTRODUCTION

Plaintiff Phyllis Huster alleges that she invented a fax-to-email system in 1994 while working as a consultant for Defendant Charles R. Bobo II.  Bobo later obtained several patents, each of which named him as the sole inventor.  Huster now seeks an order naming her as the inventor or co-inventor of those patents under 35 U.S.C. § 256.

Huster's Complaint is fatally deficient for three reasons.  First, venue is improper. Neither of the individual parties resides in this District; Huster lives in Washington and Bobo lives in Georgia.  Nor are any of the corporate defendants based in Illinois.  And the events that gave rise to Huster's claim all occurred in Georgia—both she and Bobo lived in Georgia when

---

[1]   j2 Global, Inc. is incorrectly named in the Complaint as "j2 Global Communication, Inc."

[2]   Acacia Research Group LLC is incorrectly named in the Complaint as "Acacia Patent Acquisition LLC."

[3]   In addition to this Motion brought jointly by all Defendants, Bobo is moving separately to dismiss the Complaint for lack of personal jurisdiction, and appears specially here without waiving his jurisdictional objections.  j2 and Acacia are also moving separately to dismiss the Complaint on the ground that they are not proper defendants because they have no ownership interest in the Patents-in-Suit.

she allegedly conceived of the patented invention, she and Bobo met with a patent attorney in Georgia, and Bobo ultimately obtained the patents while still living in Georgia. Because a "substantial part of the events" underlying her claim did not occur in this District, there is no basis for venue. *See* 28 U.S.C. § 1391(b).

Second, Huster's claim is barred by the doctrine of laches because Huster unreasonably delayed in bringing the action. Huster attempts to avoid laches by claiming that she did not learn of the patents until 2010, but she knew that Bobo was preparing a patent application in 1995. In fact, she alleges that she and Bobo met with a patent attorney and that she prepared drawings for the application and gave them to the attorney. (Dkt. No. 1, Compl. ¶ 14.) Yet Huster did *nothing* to follow up over the succeeding *fifteen* years. She did not bother to place a single call, or send a single email, to Bobo or to the attorney to check on the status. Nor did she make any other inquiry or perform even a cursory search of publicly-available information. As a matter of law, Huster's complete failure to protect her alleged rights amounts to an unreasonable and inexcusable delay and requires that her claim be dismissed. *See Advanced Cardiovascular Sys., Inc.* v. *SciMed Life Sys., Inc.*, 988 F.2d 1157, 1161 (Fed. Cir. 1993).

Finally, Defendants move to strike Huster's claim for monetary and other relief that is not legally available to her. Huster's sole claim is pursuant to 35 U.S.C. § 256, under which the only available remedy is to correct the patent and name her as a co-inventor. Monetary and other relief is not available. Thus, Huster's request for damages should be stricken from the Complaint. FED. R. CIV. P. 12(f).

## BACKGROUND

Huster seeks an order naming her the inventor or co-inventor of nine U.S. Patents, Nos. 5,675,507 ( "'507"), 5,870,549 ("'549"), 6,350,066 ("'066"), 6,564,321 ("'321"), 6,857,074 ("'074"), 7,895,306 ("'306"), 7,836,141 ("'141"), 7,895,313 ("'313"), and 7,934,148 ("'148") (collectively the "Patents-in-Suit"). (Compl. ¶¶ 1, 2.) The Patents-in-Suit are part of a single family; Bobo is named as the sole inventor of each. (*Id*. ¶ 6.) Broadly speaking, the patents relate to messaging technologies, including technology that allows users to access received faxes using a Web browser, which Huster refers to as a "fax-to-email system." (*Id.* ¶ 14.)

Huster alleges that she conceived of all or part of the inventions embodied in the Patents-in-Suit in 1994.[4] (*Id*. ¶¶ 10, 22.) Huster alleges that she first developed the idea of transmitting and storing faxes digitally while working as a consultant in Atlanta, Georgia. (*Id*. ¶ 10.) In 1994, while still living in Georgia, Huster allegedly built a prototype that permitted a user to receive, store and distribute voicemail and faxes using an Internet browser. (*Id*.)

During this time, Bobo also lived in Georgia, where he continues to reside today. (*Id*. ¶ 6.) In 1994, Bobo allegedly hired Huster as a consultant for NetOffice, Inc. and Huster received stock in NetOffice, Inc. (*Id*. ¶ 11.) In connection with her work for NetOffice, Huster claims that Bobo adopted her concept of using TIFF viewers in browser windows to receive and view faxes and that he wrote code "at [her] direction." (*Id*. ¶¶ 12, 13.)

Huster alleges that, around the beginning of 1995, she and Bobo discussed patenting the fax-to-email system that she claims to have invented. (*Id*. ¶ 14.) Huster allegedly created sketches of the system in preparation for patenting the idea. (*Id*.) She then sought and

---

[4] Defendants refer to Huster's allegations pursuant to the standard on a Rule 12 motion. This in no way constitutes an admission that the allegations are accurate.

received a recommendation for a law firm and provided her prototype sketches to the law firm. (*Id*.) On January 4, 1995, Huster attended a meeting at the firm's offices in Georgia. (*Id*.) During this meeting, Huster claims that she and Bobo agreed that they would be named as co-inventors of the fax to e-mail system. (*Id*.)

Sometime after discussing the patent application with Bobo and the attorney, Huster moved to Seattle. (*Id*. ¶ 15.) Notably, there is no allegation that Huster contacted Bobo or the attorney at any time, before or after her move, to ask about the status of the application or learn whether a patent had issued. Nor is there any allegation that, at any time, she performed any investigation or consulted with any other attorney to learn whether the fax-to-email system was ever patented, notwithstanding that she would have discovered the Patents-in-Suit in a matter of minutes by searching for patents naming Bobo as the inventor in any of a number of publicly accessible patent databases (*e.g.*, www.uspto.gov).

In addition to Bobo, Huster's Complaint names as defendants j2, AMT, UMS and Acacia. j2 acquired the Patents-in-Suit from a company owned by Bobo in 2004 and subsequently assigned them to AMT, a subsidiary of j2. (*Id*. ¶¶ 5, 17.) UMS is the exclusive licensee of certain of the Patents-in-Suit with respect to certain entities. (Contrary to Huster's allegation, UMS is not "related" to or "operating under the direction of" j2.) Acacia is the parent of UMS. There is no allegation that either j2 or Acacia has any current economic interest in the Patents-in-Suit, either as an owner or licensee.

Despite her knowledge that Bobo was preparing a patent application in 1995, Huster alleges she first learned about the Patents-in-Suit and her omission as an inventor in March 2010. (*Id*. ¶ 21.) She commenced this lawsuit more than three years later seeking a correction of inventorship under 35 U.S.C. § 256.

-4-

## ARGUMENT

### I.   THERE IS NO BASIS FOR VENUE IN THIS DISTRICT.

Rule 12(b)(3) permits a party to move to dismiss based on improper venue. FED. R. CIV. P. 12(b)(3); *Marzano* v. *Proficio Mortg. Ventures, LLC*, __F. Supp. 2d__, No. 12 C 7696, 2013 WL 1789779 at *3 (N.D. Ill. April 25, 2013). In assessing venue, the Court must accept well-pleaded allegations in the complaint as true, but the plaintiff bears the burden of establishing that venue is proper in her chosen district. *Marzano*, 2013 WL 1789779 at *3 (citing *Int'l Travelers Cheque Co.* v. *BankAmerica Corp.*, 660 F.2d 215, 222 (7th Cir. 1981)). If the plaintiff fails to meet her burden, the Court must dismiss the case or, if justice requires, transfer the case to a district where venue is proper. *Id.* (citing 28 U.S.C. § 1406(a)).

Venue in an inventorship action is determined by the general venue statute, 28 U.S.C. § 1391. *See Illumination Mgmt. Solutions, Inc.* v. *Ruud*, No. 10-C-1120, 2012 WL 4069315 at *1 (E.D. Wis. Sept. 14, 2012) (noting that venue was proper pursuant to 28 U.S.C. § 1391 for a case involving, *inter alia*, a correction of inventorship claim under 35 U.S.C. § 256); *St. Joseph's Solutions, LLC v. Microtek Med., Inc.,* No. 1:11-cv-388, 2011 WL 5914010 at *4 (S.D. Ohio, Nov. 28, 2011) (finding that venue was proper under § 1391 for a claim under § 35 U.S.C. § 256). Under Section 1391, there are three possible grounds for venue. None of those grounds provides a basis for Huster to pursue this action in this District.

First, an action may be brought in "a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located." 28 U.S.C. § 1391(b)(1). Venue is not proper under this provision because not all of the defendants are residents of Illinois. For Section 1391 purposes, a natural person is deemed to "reside" in the District where the individual is domiciled. 28 U.S.C. § 1391(c)(1). As Huster concedes in her

Complaint, Defendant Charles R. Bobo II lives in Atlanta, Georgia. (Dkt. No. 1, Compl. ¶ 6.) The Complaint does not allege any other facts that would suggest that Bobo could be considered a resident of Illinois. And in fact Bobo has no ties to Illinois whatsoever.[5] Because at least one of the defendants is not a resident of Illinois, § 1391(b)(1) does not provide a basis for venue.[6]

Second, an action may be brought in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or where a substantial part of the property that is the subject of the action is situated." 28 U.S.C. § 1391(b)(2). The "events or omissions giving rise to" Huster's claim occurred entirely in Georgia. Huster alleges that, while living in Georgia, she invented (or co-invented) a fax to email system. (Compl. ¶¶ 10-13.) She further alleges that she and Bobo consulted an attorney about patenting the invention—once again, in Georgia—but that the attorney ultimately filed an application naming only Bobo as the inventor. (*Id*. ¶¶ 14-15.) An inventorship claim arises out of the invention of, and application for, the patents at issue, and here those events occurred solely in Georgia. *See Dong* v. *Garcia*, 553 F. Supp. 2d 962, 965 (N.D. Ill. 2008) (holding that although the plaintiff suffered continuing injury in Illinois, venue was improper because "[t]he tort did not occur within this district"). In contrast, nothing related to the invention of the Patents-in-Suit occurred in Illinois. Therefore Huster cannot rely upon § 1391(b)(2) as a basis for venue in this District.

Third, if there is no district in which venue would be proper, venue is proper in "any judicial district in which any defendant is subject to the court's personal jurisdiction with

---

[5] *See* Declaration of Charles R. Bobo II, filed in support of Mr. Bobo's motion to dismiss for lack of personal jurisdiction, which is being filed concurrently with this motion.

[6] Defendants do not admit that the four remaining defendants reside in the Northern District of Illinois pursuant to 28 U.S.C. § 1391(c)(2) and reserve the right to contest residency of the other Defendants.

respect to such action." 28 U.S.C. § 1391(b)(3). This "fallback provision" does not apply, because a "substantial part of the events" giving rise to Huster's claim occurred in Atlanta, so venue would be proper in the Northern District of Georgia. *See* 28 U.S.C. § 1391(b)(2); *KM Enters., Inc.* v. *Global Traffic Tech., Inc.*, 725 F.3d 718, 733 (7th Cir. 2013) ("[Section 1391(b)(3)'s] fallback provision applies only when venue is not otherwise proper in any district. . . . .").

In short, Huster asserted a claim based on alleged events that occurred between her and a Georgia resident defendant entirely within the Northern District of Georgia. There is no basis for venue in the Northern District of Illinois, and therefore the case should be dismissed.

## II. HUSTER'S CLAIM IS BARRED BY LACHES BECAUSE OF HER UNREASONABLE AND INEXCUSABLE DELAY IN FILING SUIT.

The doctrine of laches bars a correction of inventorship claim under 35 U.S.C. § 256 if the plaintiff unreasonably and inexcusably delays in bringing the claim. *See Advanced Cardiovascular Sys.* v. *SciMed Life Sys.*, 988 F.2d 1157, 1161-62 (Fed. Cir. 1993). To establish laches, a defendant must show that (i) the plaintiff's delay in bringing suit was unreasonable and inexcusable, and (ii) allowing the plaintiff's claim after the delay will cause the defendant to suffer material prejudice. *Hor* v. *Chu*, 699 F.3d 1331, 1334 (Fed. Cir. 2012) (citing *A.C. Aukerman* v. *R.L. Chaides Constr. Co.*, 960 F.2d 1020, 1028 (Fed. Cir. 1992)). These elements are presumed if the plaintiff knew or should have known of the claim more than six years before filing suit.[7] *See Advanced Cardiovascular*, 988 F.2d at 1163.

---

[7] At the motion to dismiss stage, laches cannot be determined "based solely on presumptions." *Advanced Cardiovascular*, 988 F.2d at 1161. However, the presumption that a plaintiff should bring suit within six years is still highly relevant and, in conjunction with

An affirmative defense may form the basis for a motion to dismiss if the complaint alleges enough facts to establish the necessary elements of the defense. *See Anguilo* v. *U.S.*, 867 F. Supp. 2d 990, 996-97 (N.D. Ill. 2012) (citing *U.S.* v. *Lewis*, 411 F.3d 838, 842 (7th Cir. 2005)). Thus, "when the defense of laches is clear on the face of the complaint, and where it is clear that the plaintiff can prove no set of facts to avoid the insuperable bar, a court may consider the defense on a motion to dismiss." *Lennon* v. *Seaman*, 63 F. Supp. 2d 428, 439 (S.D.N.Y. 1999).

The face of Huster's Complaint demonstrates that (i) a reasonable person in her position would have inquired about the patents nearly twenty years ago, giving rise to a presumption of laches; (ii) her delay was unreasonable and inexcusable; and (iii) Defendants have been materially prejudiced by Huster's delay. Therefore laches bars Huster's claim as a matter of law.

### A.  Laches Is Presumed Because Huster Should Have Inquired About the Patents More Than Six Years Ago.

A rebuttable presumption of laches attaches if the plaintiff files suit six or more years after she knew or should have known of her claim. *See Advanced Cardiovascular*, 988 F.2d at 1163. This presumption requires the Court to infer that the delay was unreasonable and that the defendant suffered material prejudice. *See Serdarevic* v. *Advanced Med. Optics, Inc.*, 532 F.3d 1352, 1359 (Fed. Cir. 2008) ("Once the presumption of laches has attached, 'the defendants could have remained *utterly mute* on the issue of prejudice and nonetheless prevailed.'") (quoting *Hall* v. *Aqua Queen Mfg., Inc.*, 93 F.3d 1548, 1554 (Fed. Cir. 1996));

---

allegations showing that the delay was unreasonable and prejudicial, can establish laches on a Rule 12(b)(6) motion. *See id.* at 1161-64.

*Aukerman*, 960 F.2d at 1037 (noting that unreasonable delay and material prejudice must be inferred once the presumption attaches).

Huster alleges that she did not learn of the Patents-in-Suit or her omission as an inventor until 2010. (Compl. ¶ 21.) Although the Court must accept that allegation as true at this stage, Huster's purported lack of actual knowledge does not save her claim. In *Advanced Cardiovascular*, the Federal Circuit held that a plaintiff's delay should be measured from "when the claimant had actual notice of the claim or *would have reasonably been expected to inquire* about the subject matter." 988 F.2d at 1161 (emphasis added); *see also Wanlass* v. *Gen. Elec. Co.*, 148 F.3d 1334, 1338 (Fed. Cir. 1998) ("'[W]here the question of laches is in issue the plaintiff is chargeable with such knowledge as he might have obtained upon inquiry, provided the facts already known by him were such as to put upon a man of ordinary intelligence the duty of inquiry.'") (quoting *Johnston* v. *Standard Mining Co.*, 148 U.S. 360, 370 (1893)).

The Complaint alleges facts that would have prompted a reasonable person in Huster's position to inquire into the Patents-in-Suit no later than the time the first patent issued in 1997.[8] According to Huster's own allegations, she and Bobo discussed filing a patent on a fax to email system in 1995. (Compl. ¶ 14.) Huster then allegedly prepared drawings of the system and provided the drawings to a law firm that a friend had recommended to her. (*Id.*) And according to Huster, she attended a meeting with Bobo at the law firm's offices to discuss the

---

[8] In general, the laches period does not begin running until a patent issues. *See Hor* v. *Chu*, 699 F.3d at 1336-37. Four of the nine Patents-in-Suit, the '306, '141, '313 and '148 Patents, were filed within the past six years, but those patents are continuations of patents filed and issued more than six years ago. Huster's delay in bringing suit as to these more recent patents is likewise unreasonable and inexcusable given that she was on inquiry notice of the parent patents, and had she raised her claim promptly it could have been resolved before the applications for the newer patents were even filed.

patent application, at which time it was supposedly decided that she and Bobo would be named co-inventors. (*Id.*) Thus, according to Huster's own allegations, she knew in 1995 that Bobo intended to file a patent application on what she now claims was her invention and that the process of preparing the application was underway. But when Bobo then "stopped communicating with her without explanation," Huster apparently failed to ever ask why or inquire into the status of the application. (*Id.* ¶ 15.)

No reasonable person who had actually invented something would neglect to follow up for fifteen years. These facts are more than sufficient to put Huster on inquiry notice of her claim as to the Patents-in-Suit that issued more than six years ago. *See NuClimate Air Quality Sys., Inc.* v. *M & I Heat Transfer Prods., Ltd.*, No.5:08-cv-0317, 2008 WL 2917589 at *11 (N.D.N.Y., July 24, 2008) ("It is clear to the court that [plaintiff] possessed enough information that he should have known an application would be filed and accordingly should have pursued any correction of inventorship claim in a timely manner.").

### B. Huster's Allegations Establish that Her Delay Was Unreasonable and Inexcusable as a Matter of Law.

Even beyond the six year presumption of laches applicable here, Huster's allegations establish that her delay in bringing suit was both unreasonable and inexcusable. She alleges that she invented a fax to email system, participated in preparing a patent application by preparing drawings, and discussed the application with her co-inventor and patent attorney. (Compl. ¶¶ 14-15.) But when Bobo stopped communicating with her without explanation, she did nothing. The Complaint fails to allege *any* steps taken by Huster to protect her rights over the next *fifteen years*. (*Id.* ¶ 15.) She apparently never called Bobo, never called the attorney that she had retained, and never checked to see whether Bobo had patented what she claims was

her invention.  Huster's complete failure to inquire into the status of the patent for fifteen years is unreasonable as a matter of law.

Huster's only excuse for her extraordinary delay is that she trusted Bobo and her attorney to keep her apprised of any "filings and issuance of patent rights." (Compl. ¶ 15.)  This is not a sufficient excuse for her lengthy delay.  *See, e.g.*, *Serdarevic*, 532 F.3d 1352 at 1360 (rejecting plaintiff's claim that her delay was excused by her "personal lack of familiarity with the patent system" because she was previously represented by counsel); *Memorylink Corp.* v. *Motorola Solutions, Inc.*, No. 08 C 3301, 2013 WL 4401676 at *9 (N.D. Ill., Aug. 15, 2013) ("[I]gnorance of one's legal rights is not a reasonable excuse in a laches case.'") (quoting *Pro-Football, Inc.* v. *Harjo*, 567 F. Supp. 2d 46, 55 (D.D.C. 2008)).  Huster was sophisticated enough to already have identified and engaged legal counsel to patent her alleged invention, so she could have engaged a new attorney or simply contacted the attorney she already had.  She does not allege that she did either.  Because Huster has not proffered a legitimate excuse for her delay, the Complaint establishes that Huster's delay was unreasonable and inexcusable.

### C. Huster's Delay Has Prejudiced Defendants Because They Have Made Substantial Investments in the Patents-in-Suit.

The Complaint also establishes on its face that Defendants will suffer material prejudice if Huster is allowed to proceed with her claim after her unreasonable delay.  For a defense of laches, material prejudice may be either economic or evidentiary.  *Serdarevic*, 532 F.3d at 1360.  Huster's delay caused economic prejudice[9], which is established when the

---

[9]     Although evidentiary prejudice is not apparent on the face of the Complaint, given the passage of time here—nearly twenty years—there is no question that discovery would reveal lost evidence and faded memories, hindering Defendants' ability to rebut Huster's claim.

defendant or a third party will "'suffer the loss of monetary investments or incur damages which likely would have been prevented by earlier suit.'" *Id.* (quoting *Aukerman*, 960 F.2d at 1033). Indeed, economic prejudice applies to parties, other than an inventor, that have an interest in the patent, such as AMT and UMS in this case. *See Moore v. Broadcom Corp.*, C06-05647, 2008 WL 425932 at * 7 n.4 (N.D. Cal. Feb. 12, 2008) (presumption of economic prejudice further supported by harm to party that acquired patent).

Huster's allegations make clear that Defendants invested substantial financial resources in licensing the Patents-in-Suit during Huster's fifteen-plus year delay. Huster alleges that "j2 and its affiliates have aggressively pursued alleged infringers" of the Patents-in-Suit, and thereby obtained a $27 million payment from Open Text and "received great amounts of other monies in licensing and litigation settlement fees." (Compl. ¶¶ 19, 20.) In addition, this Court is well aware of the significant efforts by UMS to enforce certain of the Patents-in-Suit in the MDL proceeding, Case No. 12-C-6286. Huster now opportunistically seeks to recover half of all the revenue Defendants have derived from the Patents-in-Suit, *without setoff* to account for the substantial expenses incurred in obtaining that revenue. (Compl., Prayer for Relief.) By ignoring the Patents-in-Suit for over fifteen years and then seeking to recover half of the money earned through enforcement of those patents, Huster is attempting to free-ride on Defendants' investments. Had Huster timely filed her lawsuit, the inventorship dispute could have been resolved long before Defendants expended substantial resources enforcing the Patents-in-Suit.

Moreover, Huster alleges that j2 paid "millions of dollars" to acquire the Patents-in-Suit. (Compl. ¶ 18.) Were Huster to be successful in this suit, j2 would lose the value of that investment, which occurred long after Huster should have raised her inventorship claim. Thus, permitting Huster to pursue her claim now will materially prejudice Defendants by causing them

to "suffer the loss of monetary investments" they made in acquiring, prosecuting and enforcing the patents. *Serdarevic*, 532 F.3d at 1360.

### III.  THE COURT SHOULD STRIKE HUSTER'S REQUEST FOR RELIEF NOT AUTHORIZED BY 35 U.S.C. § 256.

Under Rule 12(f), the Court may strike "an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter.'" *Delta Consulting Grp., Inc.* v. *R. Randle Constr., Inc.*, 554 F.3d 1133, 1141 (7th Cir. 2009) (citing FED. R. CIV. P. 12(f)). A court should grant a motion to strike where the plaintiff seeks relief that is not legally available. *See Delta*, 554 F.3d at 1142 (affirming a decision to strike a prayer for certain damages because "there [was] no basis for the claim at all."); *Allison* v. *Dugan*, 737 F. Supp. 1043, 1049-50 (N.D. Ind. 1990) (granting motion to strike request for punitive damages and striking claim for compensatory damages *sua sponte* because the ERISA statute in question did not provide for such damages), *aff'd in part, rev'd in part on other grounds*, 951 F.2d 828 (7th Cir. 1992); *Brokke* v. *Stauffer Chem. Co.*, 703 F. Supp. 215, 223 (D. Conn. 1988) (granting motion to strike plaintiff's claim for punitive damages).

Huster's sole claim is under 35 U.S.C. § 256(a), which provides that "the Director may, on application of all the parties and assignees, with proof of the facts and such other requirements as may be imposed, issue a certificate of correcting such error." 35 U.S.C. § 256(a). Thus, the only relief available to Huster is an order declaring her a co-inventor and correcting the Patents-in-Suit. *See Jardin* v. *Datallegro, Inc.*, No. 10-cv-2552-IEG, 2011 WL 3300152 at *7 (S.D. Cal., July 29, 2011) ("Although other claims might follow from a change in inventorship, the sole relief under § 256 is to change the patent to reflect the true inventors.").

In her Prayer for Relief, Huster asks the Court for three forms of relief unavailable under Section 256. First, she requests "at least half of all monies received by [the defendants], without offset for costs of collecting same, for all licensing and sales of rights in the patents here in suit. . ." for the entire period that Huster alleges she was improperly omitted from the patents. (Compl., Prayer for Relief ¶ C.) This is a request for compensatory damages, which are not authorized under Section 256. *See Univ. of Utah* v. *Max-Planck-Gesellschaft Zur ForDerung Der Wissenschaften E.V.*, 881 F. Supp. 2d 151, 155 (D. Mass. 2012) (describing the requested relief in a correction of inventorship claim as "prospective in nature" and noting that the claim "does not involve a retroactive remedy"), *aff'd* __F.3d__, 2013 WL 4406638 (Fed. Cir. 2013).

Second, Huster requests a declaration that she is an "owner" or "co-owner" of the Patents-in-Suit. (Compl., Prayer for Relief ¶ A.) But Section 256 addresses inventorship, not ownership. "It is elementary that inventorship and ownership are separate issues." *Beech Aircraft Corp.* v. *EDO Corp.*, 990 F.2d 1237, 1248 (Fed. Cir. 1993). The question of inventorship is based on federal patent law while "the question of who owns the patent rights and on what terms typically is a question exclusively for state courts." *Jim Arnold Corp.* v. *Hydrotech Sys., Inc.*, 109 F.3d 1567, 1572 (Fed. Cir. 1997). Section 256 does not provide any basis upon which the Court could declare Huster an owner of the Patents-in-Suit.

Third, Huster demands costs and attorneys' fees. (Compl., Prayer for Relief ¶ D.) Once again, Section 256 does not provide a basis for an award of attorneys' fees, and Huster fails to allege any other basis.

Because Huster's requests for damages, attorneys' fees, and a declaration regarding ownership of the Patents-in-Suit are not legally available under 35 U.S.C. § 256, those portions of Huster's Prayer for Relief should be stricken.

## CONCLUSION

For the reasons set forth above, the Court should dismiss this case for improper venue and failure to state a claim, and strike Huster's request for damages.

Dated: October 28, 2013                Respectfully submitted,

/s/William B. Berndt
Paula E. Litt
William B. Berndt
SCHOPF & WEISS LLP
One South Wacker Drive, 28th Floor
Chicago, Illinois  60606
(312) 701-9300
(312) 701-9335 (facsimile)

Robert A. Sacks (*pro hac vice pending*)
Brian R. England (*pro hac vice*)
Edward E. Johnson (*pro hac vice pending*)
SULLIVAN & CROMWELL LLP
1888 Century Park East, Suite 2100
Los Angeles, California  90067
(310) 712-6600
(310) 712-8800 (facsimile)

*Attorneys for Defendants j2 Global, Inc. and Advanced Messaging Technologies, Inc.*

/s/Timothy E. Grochocinski
Timothy E. Grochocinski
Illinois State Bar No. 6295055
INNOVALAW, P.C.
1900 Ravina Place
Orland Park, IL 60462
(708) 675-1974
teg@innovalaw.com

Edward R. Nelson, III (*pro hac vice pending*)
NELSON BUMGARDNER CASTO, PC
3131 West 7th Street, Suite 300
Fort Worth, Texas 76107
(817) 377-9111
enelson@nbclaw.net

*Attorneys for Defendant Unified Messaging Solutions LLC*

/s/ Timothy P. Maloney
Timothy P. Maloney
Jared E. Hedman
FITCH, EVEN, TABIN &
FLANNERY LLP
120 South LaSalle Street, Suite 1600
Chicago, Illinois 60603
Telephone: 312-577-7000
Facsimile: 312-577-7007

*Attorneys for Defendant*
*Charles R. Bobo II*

/s/Julie Ann Meyer
Julie Ann Meyer
ARNSTEIN & LEHR, LLP
120 S. Riverside Plaza, Suite 1200
Chicago, Illinois 60606
(312) 876-6903
Email: jameyer@arnstein.com

Marc J. Schneider (*pro hac vice pending*)
Sarah S. Brooks (*pro hac vice pending*)
STRADLING, YOCCA, CARLSON, & RAUTH, P.C.
660 Newport Center Drive, Suite 1600
Newport Beach, CA 92660
Telephone: (949) 725-4000
Facsimile: (949) 725-4100
mschneider@sycr.com
sbrooks@sycr.com

*Attorneys for Defendant*
*Acacia Patent Acquisition LLC*

## CERTIFICATE OF SERVICE

I, William B. Berndt, an attorney, certify that the foregoing **Defendants' Memorandum in support of Motion to Dismiss Plaintiff Phyllis Huster's Complaint pursuant to Fed. R. Civ. P. 12(b)(3) and 12(b)(6) and to Strike Request for Damages under Fed. R. Civ. P. 12(f)** was filed electronically with the Clerk of the Court using the CM/ECF system on this 28th day of October, 2013, which will automatically send email notifications of such filing to all counsel of record.

/s/William B. Berndt