# IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| PHYLLIS A. HUSTER, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 13 C 6143 |
| | ) | |
| v. | ) | Judge Joan H. Lefkow |
| | ) | |
| j2 GLOBAL COMMUNICATION, INC., | ) | |
| ADVANCED MESSAGING | ) | |
| TECHNOLOGIES, INC., UNIFIED | ) | |
| MESSAGING SOLUTIONS, LLC, | ) | |
| ACACIA PATENT ACQUISITION LLC, | ) | |
| and CHARLES R. BOBO II, | ) | |
| | ) | |
| Defendants. | ) | |

## OPINION AND ORDER

Plaintiff Phyllis A. Huster filed a complaint against defendants j2 Global

Communication, Inc. ("j2"), Advanced Messaging Technologies, Inc. ("AMT"), Unified

Messaging Solutions, LLC ("UMS"), Acacia Patent Acquisition LLC ("Acacia"), and Charles R.

Bobo, II to correct the inventorship of nine U.S. patents[1] (collectively "the patents in suit") under

35 U.S.C. § 256.  Defendants filed four motions to dismiss, including a motion to dismiss on the

grounds of improper venue.  The court finds that venue is improper in this district but, rather

than dismiss the case, it will transfer it to the Northern District of Georgia in the interest of

justice.

---

[1] The patents in suit are U.S. Patent Nos. 5,675,507 ("the '507 patent"), 5,870,549 ("the '549 patent"), 6,350,066 ("the '066 patent"), 6,564,321 ("the '321 patent"), 6,857,074 ("the '074 patent"), 7,895,306 ("the '306 patent"), 7,836,141 ("the '141 patent"), 7,895,313 ("the '313 patent"), and 7,934,148 ("the '148 patent").

## BACKGROUND FACTS[2]

In 1994, while living in Atlanta, Georgia, Huster developed a prototype for a system that receives and stores voicemail and faxes in a central location and distributes them to users through an Internet browser.  (Compl. ¶ 10.)  By the fall of 1994, Huster was using her computer as a server to receive and transmit faxes over the internet.  (*Id.* ¶ 13.)  Around the same time, Bobo, also a Georgia resident,[3] retained Huster as a consultant for his company, NetOffice, Inc. ("NetOffice"), which also was developing a system to send faxes via email.  (*Id.* ¶¶ 11, 13.)  As compensation for her services, Huster received consulting fees and stock in NetOffice.  (*Id.*) Bobo eventually abandoned work on his own system in favor of Huster's system (the "fax-to-email system").[4]  (*Id.* ¶ 13.)

Huster and Bobo discussed patenting the fax-to-email system.  (*Id.* ¶ 14.)  Huster prepared hand-sketched drawings of the system and provided them to a law firm recommended to her by a friend.  (*Id.*)  On January 4, 1995, Huster and Bobo attended a meeting at the firm where they agreed that the patent application would name Huster and Bobo as co-inventors.  (*Id.*) When the application was filed, however, it omitted Huster's name as co-inventor without any notice to her.  (*Id.*)  This application led to one of the patents in suit.  (*Id.*)

---

[2] The following facts are taken from the complaint and are presumed true for the purpose of resolving the pending motion.  *Dixon* v. *Page*, 291 F.3d 485, 486 (7th Cir. 2002).

[3] Bobo has resided in Georgia since 1982.  (Dkt. 39 ("Bobo Decl.") ¶ 2.)  Bobo has made a few personal trips to the Chicago area, the last of which was in August 2001.  (*Id.* ¶ 5.)  He has never traveled to Illinois for business purposes and has never resided or owned any property or assets in Illinois.  (*Id.* ¶¶ 9-10.)

[4] The complaint describes Bobo's system as one that sends faxes via email and Huster's system as one that allows users to view faxes in an internet browser, but later refers to Huster's system as the "fax-to-email system."  (Compl. ¶¶ 13-14.)  For the sake of simplicity, the court refers to the invention that is the subject matter of the patents in suit as the "fax-to-email system."

Bobo and the patent attorney filed subsequent patent applications for Huster's system but did not tell Huster when the patents were issued or that she was not listed as an inventor. (*Id.* ¶¶ 14, 17.) Eventually Huster moved to Washington State and Bobo stopped communicating with her. (*Id.* ¶ 15.) Huster learned that she was omitted as a co-inventor of the patents in suit in 2010 in connection with a patent infringement suit in California. (*Id.* ¶ 21.)

After Bobo patented the fax-to-email system, he assigned the patents to NetOffice Solutions, LLC, which was not the entity in which Huster owned stock. (*Id.* ¶ 16.) Although the exact chain of ownership is unclear from the face of the complaint, the patents in suit were ultimately assigned to "j2 and its affiliates and/or Acacia." (*Id.* ¶ 18.) In 2010, j2 assigned the patents to AMT, which has offices at the same address as j2. (*Id.* ¶¶ 3, 5.)

On August 3, 2012, the United States Judicial Panel on Multidistrict Litigation centralized related patent infringement actions filed by UMS in this court. *In re Unified Messaging Solutions LLC Patent Litig.*, MDL No. 2371, No. 12 C 6286 (N.D. Ill. filed Aug. 3, 2012) ("the MDL"). The MDL related to five of the patents in suit.[5] The parties stipulated to a judgment of non-infringement and judgment was entered for the defendants on June 13, 2014. *See* Judgment, *id.* (N.D. Ill. June 13, 2014), ECF. No. 715. Although this case was assigned to the court because it was presiding over the MDL, it does not involve the same claims of infringement that are the subject of the MDL.

## ANALYSIS

Defendants have moved to dismiss on several grounds, but the court will only address defendants' motion to dismiss for improper venue as venue is improper in this district and the case should be transferred to an appropriate forum in the interest of justice. In doing so, the

---

[5] The five patents are the '074, '141, '306, '313, and '148 patents.

court notes that it need not have personal jurisdiction over a defendant to transfer venue.  *See*

*Spherion Corp.* v. *Cincinnati Fin. Corp.*, 183 F. Supp. 2d 1052, 1057 (N.D. Ill. 2002) (citing

*Cote* v. *Wadel*, 796 F.2d 981, 985 (7th Cir. 1986)).

**I.      Whether Venue Is Proper in the Northern District of Illinois**

Defendants move to dismiss for improper venue under Federal Rule of Civil Procedure

12(b)(3).  When a defendant challenges venue under Rule 12(b)(3), the plaintiff bears the burden

of establishing that venue is proper.  *See, e.g., Hanyuan Dong* v. *Garcia*, 553 F. Supp. 2d 962,

964 (N.D. Ill. 2008).  In ruling on a motion to dismiss for improper venue, the court must take all

of the allegations in the complaint as true and draw all reasonable inferences in favor of the

plaintiff.  *Id.*

In a civil action, venue is proper in:

(1) a judicial district in which any defendant resides, if all defendants are residents
of the State in which the district is located;

(2) a judicial district in which a substantial part of the events or omissions giving
rise to the claim occurred, or a substantial part of the property that is the subject
of the action is situated; or

(3) if there is no district in which an action may otherwise be brought as provided
in this section, any judicial district in which any defendant is subject to the
court's personal jurisdiction with respect to such action.

28 U.S.C. § 1391(b).

Section 1391(b)(1) does not provide a basis for venue in the Northern District of Illinois

because at least one defendant, Bobo, is not a resident of Illinois.  (*See* Compl. ¶ 6; Bobo Decl.

¶ 2.)  *See also Hearring* v. *Ill. Dep't of Corrs.*, No. 12 C 9907, 2014 WL 3640822, at *2 (N.D.

Ill. July 23, 2014) (finding venue improper under § 1391(b)(1) because plaintiff did not allege or

provide factual support that all defendants were Illinois residents).

4

Likewise, section 1391(b)(2) does not provide a basis for venue in this district because none of the events giving rise to the claim occurred here.  In fact, all of the events related to the conception, invention, and patenting of the fax-to-email system took place in Georgia.  (*See* Compl. ¶¶ 10-15; Bobo Decl. ¶¶ 13-16.)  And, despite Huster's contentions, the property that is the subject of the action is not "situated in this district" for the purposes of section 1391(b)(2).  As other courts have observed, few cases address the meaning of "property that is the subject of the action" and those that have construe the phrase to "apply only to suits involving property disputes or in rem actions[.]"  *See Cold Spring Harbor Lab.* v. *Ropes & Gray LLP*, 762 F. Supp. 2d 543, 553 (E.D.N.Y. 2011) (quoting *Bond Safeguard Ins. Co.* v. *Ward*, No. 1:09-CV-093, 2009 WL 1370935, at *5 (N.D. Ga. May 14, 2009)).  A patent is not a "res" with a definite situs because it gives "nothing more than an intangible property interest; namely, the right to exclude others from the use of the patent."  *FFOC Co.* v. *Invent A.G.*, 882 F. Supp. 642, 649 (E.D. Mich. 1994) (internal quotation marks and citations omitted); *see also Kleinschmidt* v. *Kleinschmidt Labs.*, 89 F. Supp. 869, 872 (N.D. Ill. 1950) ("[I]t is generally held that the property rights in patents is not such tangible property within the district as would justify the court in proceeding against parties who are non-residents."); *but see Beverly Hill Fan Co.* v. *Royal Sovereign Corp.*, 21 F.3d 1558, 1571 (Fed. Cir. 1994) (for purpose of determining where injury in infringement suit is felt, situs of patent is where the patent owner resides) (citing *Honeywell, Inc.* v. *Metz Apparatewerke*, 509 F.2d 1137, 1142 (7th Cir. 1975)).[6]

---

[6] Even if a patent were a "res" suitable to be analyzed under the second clause of section 1391(b)(2), Huster provides no support for her argument that the patents in suit are located in this district as the patent owners reside either in California or Delaware.  Huster points only to the fact that the MDL relating to some of the patents in suit was centralized here, but there is no authority for the theory that venue is proper in a district in which a tangentially related MDL has been centralized.  Moreover, even if it were possible for the court to allow Huster's claim to go forward in this court, judgment has been entered in the MDL and there are no judicial efficiencies to be gained by doing so.

Finally, the court must consider whether there is another district in which an action may be brought consistent with either section 1391(b)(1) or (2).  If there is, the "fallback" provision in section 1391(b)(3) cannot be used as a basis for venue in this district.  *See KM Enters., Inc.* v. *Global Traffic Techs., Inc.*, 725 F.3d 718, 733 (7th Cir. 2013).  Defendants assert that venue would be proper under section 1391(b)(2) in the Northern District of Georgia because that is the location of the events giving rise to the claim (*see* dkt. 37 at 7),[7] and by requesting in the alternative that her case be transferred to the Northern District of Georgia, Huster concedes that venue would be proper there (*see* dkt. 57 at 3).  Because there is an alternate forum for this case that satisfies section 1391(b)(2), Huster has failed to meet her burden to demonstrate that venue is proper here.

## II.     Whether the Case Should Be Dismissed or Transferred to a Proper Venue

Because Huster has failed to establish proper venue in this district, the court must consider whether the case should be dismissed or transferred to a proper venue.  The court may either "dismiss, or if it be in the interest of justice, transfer [the] case to any district or division in which it could have been brought."  28 U.S.C. § 1406(a).  Generally the interests of justice favor transfer because dismissal may be inefficient and "justice-defeating." *See Goldlawr, Inc.* v. *Heiman*, 369 U.S. 463, 467, 82 S. Ct. 913, 8 L. Ed. 2d 39 (1962).

Although there is no statute of limitations for claims for correction of inventorship pursuant to 35 U.S.C. § 256, *see Stark* v. *Advanced Magnetics, Inc.*, 29 F.3d 1570, 1573 (Fed. Cir. 1994), defendants argue that Huster should be barred from pursuing her claim under the

---

[7] Presumably defendants also concede that the Northern District of Georgia would have personal jurisdiction over j2, AMT, UMS, and Acacia. *See FS Photo, Inc.* v. *PictureVision, Inc.*, 48 F. Supp. 2d 442, 448 (D. Del. 1999) ("[S]ection 1391(b)(3) may only be utilized if there is no other district which would have *both* personal jurisdiction and venue as to all defendants.") (emphasis added).

doctrine of laches.[8]  Thus the timing of Huster's suit may bear on its eventual resolution and the court is reluctant to require her to refile the suit in another forum.  In addition, there does not appear to be any dispute that the only appropriate venue for this case is the Northern District of Georgia.  The court thus will transfer the case to the United States District Court for the Northern District of Georgia in the interest of justice.

**CONCLUSION**

For the foregoing reasons, this case is transferred to the United States District Court for the Northern District of Georgia.

Date:  September 19, 2014

_____
U.S. District Judge Joan H. Lefkow

---

[8] The court notes that Huster has requested relief that goes beyond that typically available under § 256.  Generally, the sole relief under § 256 is "to change the patent to reflect the true inventors." *Jardin* v. *Datallegro, Inc.*, No. 10-CV-2552, 2011 WL 3300152, at *19 (S.D. Cal. July 29, 2011).  But Huster asks that she be named as the owner or co-owner of the patents and that defendants, including Bobo, pay "at least half of all monies received by them, without offset for costs of collecting same, for all licensing and sales of rights in the patents" and costs and attorney fees.  (Compl. at 8.)  It is apparent that Huster intends to pursue some type of monetary relief against defendants and such claims could be subject to a statute of limitation.