## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA

| | | |
|---|---|---|
| Phyllis A. Huster | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| J2 Global Communication, Inc., | ) | Civil No.: 1:14-CV-03304-ELR |
| Advanced Messaging Technologies, Inc., | ) | |
| Unified Messaging Solutions, LLC, | ) | |
| Acacia Patent Acquisition LLC, and | ) | |
| Charles R. Bobo II. | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## CORRECTED AMENDED COMPLAINT

Plaintiff Phyllis A. Huster ("Plaintiff") hereby files this Amended Complaint against J2 Global, Inc., Advanced Messaging Technologies, Inc., Unified Messaging Solutions, LLC , Acacia Patent Acquisition LLC, and Charles R. Bobo II ("Defendants"). This Amended Complaint does not assert any new claims but merely clarifies the claims already supported by the original complaint. Plaintiff respectfully alleges as follows:

<u>**PARTIES, JURISDICTION, AND VENUE**</u>

1.

Plaintiff, Phyllis A. Huster, is an individual, a resident of Seattle, Washington, residing at 2550 Thorndyke Ave. W #303, Seattle, WA 98199.

2.

On information and belief, Defendants J2 Global, Inc. ("J2"), and its wholly owned subsidiary Advanced Messaging Technologies, Inc. ("AMT"), are Delaware corporations, both having offices at 6922 Hollywood Boulevard, Suite 500, Los Angeles, CA 90028.

3.

On information and belief, Defendant, Unified Messaging Solutions, LLC ("UMS") is a subsidiary of Acacia Research Group LLC an having office at 500 Newport Center Dr., 7th Fl, Newport Beach, CA 92660.

4.

On information and belief, Acacia Patent Acquisition LLC is a subsidiary of Acacia Research Group LLC having an office at 500 Newport Center Dr., 7th Fl, Newport Beach, CA 92660.

5.

On information and belief, AMT was and currently is assignee of all the patents here in suit, by various assignments to it made and recorded in May 2010. On information and belief, UMS is an exclusive licensee of one or more of the

patents-in-suit.  AMT and UMS are or have been named plaintiffs in numerous patent infringement actions asserting one or more of the patents-in-suit.

6.

J2 was an assignee and assignor of one or more of the patents-in-suit.

7.

Acacia Patent Acquisition was an assignee and assignor of one or more of the patents-in-suit.

8.

On information and belief, each of Defendants derive income from one or more of the patents-in-suit.

9.

Defendant Charles R. Bobo II is an individual, residing at 569 Elmwood Dr. NE, Atlanta, GA 30306-3641.  Mr. Bobo is erroneously named as the sole inventor and patentee on each of the patents here in suit, although he did not invent or only co-invented the subject matter claimed in each of the patents-in-suit.

10.

This action arises under 35 U.S.C. § 256 et seq., the Patent Laws of the United States, to correct the inventorship of nine U.S. Patents, Nos. 5,675,507, 5,870,549, 6,350,066, 6,564,321, 6,857,074, 7,895,306, 7,836,141, 7,895,313, and 7,934,148 (collectively, the "patents-in-suit").

11.

This Court has subject matter jurisdiction under 28 USC § 1331 and 1338(a), as it involves, among other relief, a request for correction of inventorship of US Patents under 35 USC § 256. Jurisdiction also is based on 28 U.S.C. § 1332 because there are common law claims, the case is between citizens of different states and the matter in controversy exceeds the statutory threshold, exclusive of interest and costs.

12.

Venue is proper in this District under 28 USC §1391(b)(2) or (3).

13.

The Court has personal jurisdiction over Mr. Bobo *inter alia* because Mr. Bobo resides in this district and because a substantial part of the events or omissions giving rise to the claim occurred in this District. The Court has personal jurisdiction over the remaining Defendants *inter alia* because a substantial part of the events or omissions giving rise to the claims occurred in this District.

## FACTUAL BACKGROUND

14.

Starting in 1991, while consulting on communications technologies with the Emory University Police Department in Atlanta, Plaintiff Huster built a Mac based system to manage police incident reports.  In 1993, Ms. Huster identified a need for detectives to be able to share faxes in digital form easily and began studying

ways to modify her system to solve this problem.  In 1994, on her own time, Ms. Huster conceived the idea of transmitting and storing telefax messages digitally, via e-mail rather than as packets via the switched telephone network, to afford wider access to information provided initially by telefax.  On her own time and not for any client, after July 1994 she conceived and built a prototype for a system to allow voicemail and faxes to be centrally received, stored, and then distributed using a Mosaic Internet browser to facilitate one or more people's access to the information in those faxes and voicemails.  Ms. Huster then developed extensive experience in wireless devices, browsers, and personal data assistants ("PDAs"); she has built eight commercially deployed applications for Atlanta businesses.

15.

Charles R. Bobo II, currently erroneously named as sole inventor of each and all of the patents in suit, in December 1994 operated NetOffice, Inc.  He retained Ms. Huster as a consultant and later a shareholder but not ever as an employee.  No employment agreement was ever signed between NetOffice, Inc. and Ms. Huster, and Ms. Huster never received pay as an employee of NetOffice, Inc.  Ms. Huster did, on December 31, 1994, receive stock in NetOffice, Inc.  She received compensation occasionally as an outside consultant via her independent consulting firm, Mobile Intelligence, during her time of working with NetOffice, Inc., and Mr. Bobo.

5

16.

Mr. Bobo in 1994 was a Lotus Notes administrator for the Coca Cola Company; he had not developed commercial software or applications.  He was not familiar with TCP/IP net-working, web server, or telephony technology, but he offered to and did introduce Ms. Huster to Coca Cola executives; he attended meetings where Ms. Huster discussed her Fax over Web prototype system, but he did not contribute at those meetings apart from setting them up.  Mr. Bobo was able to write code at Ms. Huster's direction.

17.

By the fall of 1994, Ms. Huster's Mac computer was set up as a TCP/IP server and was able to receive and transmit faxes via the Internet, the central focus of the later '507 and '066 patents in suit.  Mr. Bobo abandoned his work toward sending faxes over email by late 1994, due to bandwidth limitations of about 4 MB per message, in favor of Ms. Huster's concept of using TIFF viewers in browser windows to receive and view faxes as downloads of any size.

18.

Ms. Huster and Mr. Bobo discussed filing for a patent on the fax to Internet system with Charles Brewer the CEO of Mindspring and he suggested reaching out to Lou Eisef, the patent attorney Charles Brewer's prior company Audiofax used for their patents and suggested Ms. Huster make sure to prepare hand sketched drawings in advance of any patent attorney meeting.  Ms. Huster prepared hand-

sketched drawings of her fax-to-Internet system and provided those to a law firm called Hopkins and Thomas which came as a recommendation.  Ms. Huster visited their offices on January 4, 1995, where it was agreed that she and Mr. Bobo would be named as co-inventors in the patent filing.

19.

Mr. Bobo expressed to Ms. Huster that he was very reluctant to file any patent applications on the fax-to-Internet or –email systems because of cost as well as time limitations.  Ms. Huster had to arrange financing for the costs of the application and conducted all initial contacts with patent counsel.  All initial bills for work as well as patent discussions and documents shared were sent to Ms. Huster's personal PO Box for her consulting firm Mobile Intelligence.

20.

Soon after those discussions began with patent counsel and Mr. Bobo as to preparing and filing an application for patent on the fax-to-Internet system, Ms. Huster took employment elsewhere in Atlanta, which required her extensive travelling away from Atlanta.  She then moved to New Jersey for employment there, and to Seattle after several years in New Jersey.

21.

Mr. Bobo and patent counsel stopped communicating with Ms. Huster during this time without explanation; her emails and phone calls to them went

unanswered, and she reasonably concluded that Mr. Bobo's unwillingness to proceed with any patent application had won out in her absence.

22.

The patent attorney at the firm did file  patent applications that became the '507 and subsequent patents, but as sole inventions of Mr. Charles Bobo II, omitting Ms. Huster's name without comment, notice, or explanation, and without deceptive intention on her part.

23.

Ms. Huster was not familiar in 1994 with patent prosecution formalities and did not know of declaration signatures and other requirements for filing a patent application.  She trusted her counsel and Mr. Bobo to keep her informed of any filings and issuance of patent rights and did not suspect that her interests in the fax to Internet invention had in fact been usurped by Mr. Bobo via the counsel that she had obtained.  Rather, she reasonably concluded from the silence from Mr. Bobo and from her counsel that any patent application activity had ceased; she therefore had no reason or obligation to investigate further.

24.

Mr. Bobo never assigned any of his claimed patent rights to NetOffice, Inc., the company that Ms. Huster owned stock in and for which she consulted.  Mr. Bobo did later assign several of his patent rights to a different company, NetOffice Solutions, LLC, at the end of 1998.

25.

J2 acquired rights to the '507, '549, '066, '321, and '074 patents in about August 2004, despite J2's knowledge then of Ms. Huster's role in inventing or co-inventing the claimed subject matter.  Ms. Huster however was then still unaware of these patents and that she had been omitted from their inventorship and ownership.

26.

On information and belief, Mr. Bobo has received millions of dollars for assigning the patents-in-suit here in suit to J2 and its affiliates and/or to Acacia. Mr. Bobo may have received other monies for assigning or licensing others of the patents-in-suit patents to others without notice to Ms. Huster.

27.

On information and belief, J2 and its affiliates have received $27 million from the Open-Text company in April 2013, for a paid-up license under the patents now in suit.  J2 and its affiliates have received great amounts of other monies in licensing and litigation settlement fees related to the patents-in-suit.

28.

J2's net income increased from about $13.4 million in 2002 to about $83 million by 2010; 90% of which it admits comes from the patents-in-suite.  J2 and its affiliates have aggressively pursued alleged infringers of those patents, who

participate in the fax-to-email business.  On information and belief, J2 has received

at least $827,599,000 in licensing revenues on the patents-in-suit.

29.

Only after about March 2010, did Ms. Huster learn, from counsel for a

defendant in J2's litigation in a California federal court, of the several patents-in-

suit being asserted by J2 in infringement litigation and thus of her being omitted

from inventorship and ownership of those patents.  By January 2011, then-counsel

for Ms. Huster advised J2 of her interest in pursuing her claims to inventorship and

ownership; but negotiations were unsuccessful.

**COUNT I:**
**CORRECTION OF INVENTORSHIP UNDER 35 U.S.C. § 256**

30.

Plaintiff reasserts and incorporates by reference the allegations contained in

Paragraphs 14 through 29.

31.

Plaintiff Ms. Huster first conceived of and thus invented some or all

elements of each or all claims of each of the asserted patents here in suit.  Under 35

USC §256, Ms. Huster should have been named as sole inventor or as a co-

inventor of each of those patents but was omitted without any deceptive intention

on her part.  She now seeks to be named properly or joined properly as the inventor

or as a co-inventor on, and hence as owner or co-owner of, each of the patents here in suit.

32.

Each of the patents here in suit claims priority in whole or in part back to the originally-filed patent application, the application for the '507.  The '549 patent has added disclosure, but that is also derived wholly from Ms. Huster's conception and disclosure to Mr. Bobo and their counsel.

33.

Significant portions of subject matter claimed in the '507 patent were first conceived in whole or in part by Ms. Huster.  Ms. Huster solely invented the matters defined in claims 1-2, 7, 12-34, 36-59, and 66-70 of the '507 patent, without contribution by Mr. Bobo.

34.

All of the subject matter of all the claims, nos. 1-4, of the '549 patent were first conceived in their entirety by Ms. Huster, without contribution by Mr. Bobo.

35.

Significant portions of subject matter claimed in the '066 patent and its reissue patent were first conceived in whole or in part by Ms. Huster.  Ms. Huster solely invented the matters defined in claims 1-4, 6-11, 14-23, 25, 26, and 29-35 of the original '066 patent and claims 1-51 and 54-57 of the reissue patent, without contribution by Mr. Bobo.

36.

Significant portions of subject matter claimed in the'321 patent were first conceived in whole or in part by Ms. Huster.  Ms. Huster solely invented the matters defined in claims 1-11, 13, 14, 16-38, 40-53, 55-80, and 82-87, without contribution by Mr. Bobo.

37.

Significant portions of subject matter claimed in the '074 patent were first conceived in whole or in part by Ms. Huster.  Ms. Huster solely invented the matters defined in claims 1-8, 11-13, 16, and 20-28, without contribution by Mr. Bobo.

38.

All of the subject matter of all the claims, nos. 1-55, of the '306 patent were first con-ceived in their entirety by Ms. Huster, without contribution by Mr. Bobo.

39.

Significant portions of subject matter claimed in the '141 patent were first conceived in whole or in part by Ms. Huster.  Ms. Huster solely invented the matters defined in claims 1-11, 14, 18, 21-26, 28, 31, 32, 35-42, 46, 47, 52-57, 59, and 62-67, without contribution by Mr. Bobo.

40.

All of the subject matter of all the claims, nos. 1-42, of the '313 patent were first conceived in their entirety by Ms. Huster, without contribution by Mr. Bobo.

41.

Significant portions of subject matter claimed in the '148 patent were first conceived in whole or in part by Ms. Huster.  Ms. Huster solely invented the matters defined in claims 1-44, 45-69, 71, 72, 74-82, 84-158, 160, 161, 164-165, 170, 171, and 174-178 of the '148 patent, without contribution by Mr. Bobo.

42.

On information and belief, each of the defendants in this case has an economic stake in the validity of the patents involved and hence in the correct inventorship designations on the patents-in-suit.  Thus, each of the defendants may properly be named as a defendant in this § 256 action.

### COUNT II:
### FRAUDULENT CONCEALMENT

43.

Plaintiff reasserts and incorporates by reference the allegations contained in Paragraphs 14 through 42.

44.

Mr. Bobo fraudulently concealed to Ms. Huster the fact that he filed the patent applications for the patents-in-suit, listing himself as sole inventor and omitted Ms. Huster as an inventor.  Mr. Bobo fraudulently concealed these facts with the intent to deceive and mislead Ms. Huster into thinking that no patent

applications were filed for her inventions and to prevent Ms. Huster from seeking to be named as the sole or joint inventor of the patents-in-suit.

45.

Mr. Bobo knew that he was not the sole inventor of the patents-in-suit and knew that Ms. Huster was the sole and/or joint inventor of the patents is suit.

46.

Based on Ms. Huster and Mr. Bobo's relationship Mr. Bobo had a duty to Ms. Huster. Ms. Huster trusted Mr. Bobo and reasonably relied on his silence regarding any patent application for her inventions.  Ms. Huster relied on Ms. Bobo's silence that no patent applications or patents existed for her inventions.

47.

Ms. Huster was damaged because of Mr. Bobo's fraudulent concealment.

48.

To punish, penalize and deter Defendant for its wrongful conduct, Plaintiff is entitled to punitive damages in an amount to be determined by a jury on a trial of the issues in this case.

## COUNT III:
## BREACH OF FIDUCIARY DUTY

49.

Plaintiff reasserts and incorporates by reference the allegations contained in Paragraphs 14 through 48.

50.

A fiduciary relationship existed between Mr. Bobo and Ms. Huster as a matter of law and due to the parties relationship that place on Mr. Bobo a fiduciary duty with respect to Ms. Huster's inventions.

51.

Mr. Bobo agreed to list Ms. Huster as an inventor on any patent applications claiming her invention.

52.

Mr. Bobo breached that fiduciary duty when he named himself as sole inventor of Ms. Huster's inventions and did not list Ms. Huster as sole or joint inventor on the patents-in-suit.

53.

Plaintiff has been damaged by Defendant's breach of his fiduciary duty in an amount to be established at trial.

## COUNT IV:
## UNJUST ENRICHMENT

54.

Plaintiff reasserts and incorporates by reference the allegations contained in Paragraphs 14 through 48.

55.

Ms. Huster conferred the benefit of her invention to Mr. Bobo and Mr. Bobo has unjustly benefitted from Ms. Huster's invention.   On information and belief,

Mr. Bobo has received royalties and other economic benefits based on the patents-in-suit.  Under equitable principles, Mr. Bobo should compensate Ms. Huster.

56.

Similarly, the other Defendants as owners, assignees, and licensees of the patents-in-suit have unjustly benefitted from Ms. Huster's invention.  On information and belief, the defendants have received royalties and other economic benefits based on the patents-in-suit.    Under equitable principles, defendants should compensate Ms. Huster.

### COUNT V:
### BREACH OF CONTRACT

57.

Plaintiff reasserts and incorporates by reference the allegations contained in Paragraphs 14 through 48.

58.

The rights and obligations of the parties are governed by Mr. Bobo's agreement to list Ms. Huster as an inventor on any patent applications claiming her invention.

59.

Mr. Bobo breached that agreement when he named himself as sole inventor of Ms. Huster's inventions and did not list Ms. Huster as sole or joint inventor on the patents-in-suit.

60.

Defendant's actions constitute breach of contract by Defendant.

61.

Plaintiff has been damaged by Defendant's breach of contract in an amount to be established at trial.

## COUNT VI
### BREACH OF A PRIVATE DUTY

62.

Plaintiff reasserts and incorporates by reference the allegations contained in Paragraphs 14 through 48.

63.

Private duties were created by Mr. Bobo's agreement to list Ms. Huster as an inventor on any patent applications claiming her invention.  Private duties also were created by the relationship that developed between Mr. Bobo and Ms Huster.

64.

Mr. Bobo breached that fiduciary duty when he named himself as sole inventor of Ms. Huster's inventions and did not list Ms. Huster as sole or joint inventor on the patents-in-suit.

65.

Plaintiff has been damaged by Defendant's breach of private duties in an amount to be established at trial.

<u>**COUNT VII**</u>
<u>**CONVERSION**</u>

66.

Plaintiff reasserts and incorporates by reference the allegations contained in

14 through 48.

67.

Mr. Bobo, without authority, exercised the right of ownership over

Plaintiff's inventions, the patents-in-suit and earning therefrom, when he named

himself as sole inventor of Ms. Huster's inventions and did not list Ms. Huster as

sole or joint inventor on the patents-in-suit and did not current this

misrepresentation.

68.

The other Defendants are liable based on successor liability.

69.

Furthermore, Defendants, without authority, exercised the right of ownership

over Plaintiff's inventions, the patents-in-suit and earning therefrom, knowing that

Ms. Huster was the sole or joint inventor of the patents-in-suit.

70.

Plaintiff has been damaged by Defendants' conversion in an amount to be

established at trial.

## COUNT VIII:
### BREACH OF THE DUTY OF GOOD FAITH AND FAIR DEALING

71.

Plaintiff reasserts and incorporates by reference the allegations contained in Paragraphs 14 through 48 and 57 through 61.

72.

Defendant violated the implied covenant of good faith and fair dealing imposed by Mr. Bobo's agreement to list Ms. Huster as an inventor on any patent applications claiming her invention.

73.

Plaintiff has been damaged by Mr. Bobo's breach of the implied covenant of good faith and fair dealing in an amount to be established at trial.

## COUNT IX:
## ATTORNEY'S FEES

74.

Plaintiff reasserts and incorporates by reference the allegations contained in Paragraphs 14 through 73.

75.

Defendants have been stubbornly litigious and have acted in bad faith.

76.

Plaintiff is therefore entitled to relief pursuant to O.C.G.A § 13-6-11.

77.

Furthermore, this is an exceptional case under 35 U.S.C. § 285 and Plaintiff's is entitled to attorney's fees.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully prays for the following relief:

(a)     trial by jury on all issues so triable as of right;

(b)     a declaration that Plaintiff Phyllis A. Huster conceived all or parts of the subject matter defined in claims of each of the patents here in suit and that she therefore should have been named as sole inventor and owner or as a co-inventor and co-owner of each of the patents here in suit, as the proofs shall show, under 35 USC §256;

(c)     an Order that the Director of the United States Patent Office substitute or add Plaintiff Phyllis A. Huster as sole inventor of the matter claimed in US Patents nos. 5,870,549, 7,895,306, and 7,895,313, and as first-named co-inventor of US Patents nos. 5,675,-507, 6,350,066 and its reissue, 6,564,321, 6,857,074, 7,836,141, and 7,934,148, as the proofs shall show, under 35 USC §256;

(d)     an accounting and disgorgement of any revenue received from Defendants based on the patents-in-suit;

(e)     judgment against Defendants awarding fair and reasonable damages including general damages, special damages, and punitive damages, as allowed by law;

(f)     costs of this action, including interest and reasonable attorneys fees; and

(g)     such other and further relief as this Court deems just and fair.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all issues so triable as of right and plead in this case.

Respectfully submitted this 11th day of February 11, 2015.

/s/ Charlena Thorpe
Charlena L. Thorpe
Georgia Bar No. 760954
charlena.thorpe@charlenathorpe.com
THE LAW OFFICE OF CHARLENA
THORPE, INC.
2180 Satellite Boulevard
Suite 400
Duluth, GA 30097
Tel: 770-239-1642
Fax:  888-898-3784

*Attorney for Plaintiff*

**Counsel certifies that the brief has been prepared with one of the font and point selections approved by the court in LR 5.1C

I certify that I have served the CORRECTED AMENDED COMPLAINT via the Court's CM/ECF system on February 12, 2015, to opposing counsel of record.

Dated: February 12, 2015      By: /s/ Charlena Thorpe
                                         Charlena Thorpe