# IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF GEORGIA ATLANTA DIVISION

| | | |
|---|---|---|
| PHYLLIS A. HUSTER, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | 1:14-CV-03304-ELR |
| | * | |
| J2 GLOBAL COMMUNICATIONS, | * | |
| INC.; ADVANCED MESSAGING | * | |
| TECHNOLOGIES, INC.; UNIFIED | * | |
| MESSAGING SOLUTIONS, LLC; | * | |
| ACACIA PATENT ACQUISITION, | * | |
| LLC; and CHARLES R. BOBO, II, | * | |
| | * | |
| Defendants. | * | |
| | * | |

_____

# O R D E R
_____

On November 12, 2015, this Court resolved several pending motions to dismiss, leaving only claims against Defendant Charles R. Bobo. Because Bobo presented evidence outside the pleadings, the Court notified the parties of its intent to convert the remainder of the motions to dismiss (Doc. Nos. 135 & 137) into motions for summary judgment. The parties filed supplemental briefing, and the motions are now ripe for the Court's consideration.

# I.   BACKGROUND

The facts supporting each cause of action began roughly two decades ago, when Defendant Bobo and Plaintiff began working together for Bobo's company, NetOffice, Inc. ("NetOffice"). (Doc. No. 158-4 (agreement between Bobo and Plaintiff whereby Plaintiff agreed to work as a full time employee of NetOffice in exchange for 30 percent ownership in the company).) On January 4, 1995, Bobo and Huster met with Geoff Sutcliffe, a patent attorney, to discuss matters related to intellectual property. Mr. Sutcliffe filed a patent application on April 28, 1995, which listed Bobo as the sole inventor. (Doc. No. 158-8.) Plaintiff maintains, however, that the April 1995 patent was based on her ideas and handwritten drawings. Accordingly, Plaintiff brought the instant suit to correct inventorship of the April 1995 patent, as well as eight others purportedly based on her designs and conceptions. Plaintiff resigned from NetOffice in February 1996 pursuant to a signed agreement between herself and Bobo. (Doc. No. 159-2.)

Originally, Plaintiff asserted nine causes of action against five Defendants. All Defendants joined in a collective motion to dismiss. (Doc. No. 135.) Defendant Bobo additionally filed his own motion to dismiss, which addressed claims pertaining to him individually. (Doc. No. 137.) In resolving the motions to dismiss, the Court dismissed (1) the correction of inventorship, conversion, and attorney's fees claims against all Defendants; and (2) the fraudulent concealment, breach of

fiduciary duty, unjust enrichment, breach of contract, breach of private duty, and breach of the duty of good faith and fair dealing claims against the four corporate Defendants. Accordingly, Plaintiff's six remaining state law claims against Defendant Bobo are as follows: (1) fraudulent concealment; (2) breach of fiduciary duty; (3) unjust enrichment;[1] (4) breach of contract; (5) breach of private duty; and (6) breach of the duty of good faith and fair dealing.[2] The crux of Plaintiff's argument is that she was unaware that Bobo omitted her name as the inventor of the patents-in-suit.

## II.    ANALYSIS

In the two motions to dismiss, Bobo asserts a statute of limitations defense as to the state law claims. Plaintiff responds that the statute of limitations was tolled for each claim based on her allegations of fraud.

"Statutes of limitations establish the period of time within which a claimant must bring an action. As a general matter, a statute of limitations begins to run when the cause of action 'accrues'—that is, when 'the plaintiff can file suit and obtain relief.'" Heimeshoff v. Hartford Life & Accident Ins. Co., 134 S. Ct. 604, 610 (2013) (quoting Bay Area Laundry and Dry Cleaning Pension Trust Fund v. Ferbar Corp. of Cal., 522 U.S. 192, 201 (1997)). The Supreme Court "has often

---

[1]    The only claim still pending in the Joint Motion to Dismiss is for unjust enrichment against Defendant Bobo. (Doc. No. 135.) The five other state law claims are addressed in Defendant Bobo's individual motion to dismiss. (Doc. No. 137.)

[2]    This Court has jurisdiction over these state law claims as Defendant Bobo and Huster are domiciled in different states and the amount in controversy exceeds the statutory minimum.

construed statutes of limitations to commence when the plaintiff is permitted to file suit." Id.; Hoffman v. Ins. Co. of N. Am., 245 S.E.2d 287, 288 (Ga. 1978) ("The statute of limitation begins to run on any given claim on the date the claim accrues in other words, on the date that suit on the claim can first be brought. When the question is raised as to whether an action is barred by a statute of limitations, the true test to determine when the cause of action accrued is to ascertain the time when the plaintiff could first have maintained his action to a successful result." (internal quotations omitted)).

For each of the remaining claims, the parties do not appear to dispute that the applicable statute of limitations is, at most, four years. O.C.G.A. § 9-3-26 (statute of limitations for breach of oral contract is four years); Hendry v. Wells, 650 S.E.2d 338, 343 (Ga. Ct. App. 2007) (statute of limitations for breach of fiduciary duty is four years); Heretyk v. P.M.A. Cemeteries, Inc., 611 S.E.2d 744, 745 n.5 (Ga. Ct. App. 2005) (statute of limitations for unjust enrichment is four years); and Paul v. Destito, 550 S.E.2d 739, 745–46 (Ga. Ct. App. 2001) (statute of limitations for fraud is four years).[3]

Statutes of limitations notwithstanding, O.C.G.A. § 9-3-96 provides: "If the defendant or those under whom he claims are guilty of a fraud by which the

---

[3]     Neither party cites authority for the statute of limitations in breach of private duty and breach of the duty of good faith and fair dealing claims. However, each party appears to agree that the applicable statute of limitations is four years. Because the Court finds that Huster knew of her potential causes of action in the mid-1990's, it is clear that her claims fall well outside any applicable statutes of limitation.

plaintiff has been debarred or deterred from bringing an action, the period of limitation shall run only from the time of the plaintiff's discovery of the fraud." This tolling provision requires proof of three elements:

> (1) actual fraud on the part of the defendant involving moral turpitude, (2) which conceals the existence of a cause of action from the plaintiff, and (3) plaintiff's reasonable diligence in discovering his cause of action despite his failure to do so within the time of the applicable statute of limitations.

Garland v. Advanced Med. Fund, L.P. II, 86 F. Supp. 2d 1195, 1207 (N.D. Ga. 2000) (internal quotations omitted).

## A.     Actual Fraud Involving Moral Turpitude

Plaintiff's allegations of fraud stem from the fact that Bobo failed to inform her that he left her name off of the patent applications. Such an omission does not rise to the level of actual fraud involving moral turpitude, as "mere silence does not toll the statute of limitation by debarring the plaintiff from bringing [her] action." Brooks v. Freeport Kaolin Co., 324 S.E.2d 170, 172 (Ga. 1985). However, "[i]n cases of a confidential relationship, silence when one should speak, or failure to disclose what ought to be disclosed, is as much a fraud in law as is an actual false representation." Goldston v. Bank of Am. Corp., 577 S.E.2d 864, 868 (Ga. Ct. App. 2003) (internal quotations and alterations omitted). Georgia law further provides:

> Any relationship shall be deemed confidential, whether arising from nature, created by law, or resulting from contracts, where one party is

so situated as to exercise a controlling influence over the will, conduct, and interest of another or where, from a similar relationship of mutual confidence, the law requires the utmost good faith, such as the relationship between partners, principal and agent, etc.

O.C.G.A. § 23-2-58. Examples of confidential relationships recognized by Georgia courts include (1) employer and employee; (2) partners; (3) clergyman and church member; and (4) principal and agent. Garland, 86 F. Supp. 2d at 1208–09 (listing cases).

Here, Plaintiff has set forth sufficient evidence to create an issue of fact as to whether she and Bobo were in a confidential relationship as shareholders. She has not, however, presented any evidence regarding Bobo's *intent* to defraud her. See Hunter Maclean, Exley & Dunn, P.C. v. Frame, 507 S.E.2d 411, 413 (Ga. 1998) ("In such cases, before the running of the limitation period will toll, it must be shown that the defendant concealed information by an intentional act—something more than a mere failure, with fraudulent intent, to disclose such conduct, unless there is on the . . . existence between the parties of a confidential relationship." (internal quotations omitted)). Even assuming Plaintiff could show, under the lessened standard, that Bobo intended to defraud her by remaining silent, the Court finds the other two elements prove fatal to Plaintiff's claims.

## B.    Knowledge of the Causes of Action

Next, to toll the statutes of limitations, "the fraud must conceal the existence of the cause of action from the plaintiff, thereby debarring or deterring the

6

knowing of the cause of action." Charter Peachford Behavioral Health Sys. v. Kohout, 504 S.E.2d 514, 522 (Ga. Ct. App. 1998). "The key element for such tolling to apply is that the fraud must have debarred or deterred plaintiff from bringing the suit timely. The fraud must conceal the cause of action and cut plaintiff off from suing, preclude h[er], hinder h[er], shut h[er] out, or exclude h[er] to debar h[er] from bringing suit for purposes of suspension of the running of the statute of limitation." Id. at 522 (internal citation omitted).

Defendant presents a great deal of evidence showing that Plaintiff was aware of the disputed patent as early as 1996.

In terms of Huster's testimony, Defendant relies on three statements made during an April 2014 deposition. First, Huster testified that, in February 1996, she was aware that a patent application was being processed:

> Q: As of February of 1996, when you left, was it your understanding the application was still pending?
>
> A: What do you mean by the word pending? I don't know what you mean by that.
>
> Q: Did you understand that there was still an application for the patent that was being processed?
>
> A: Yes.

(Huster Dep. I at 243:9–16, Doc. No. 155-2.) Huster claims, in one paragraph of a declaration filed with her supplemental briefing, that she believed the question to mean that she understood an attorney was working on a patent application, not that

an application was being processed by the United States Patent Office. (Huster Decl. ¶ 1, Doc. No. 169-1.) This is a distinction without a difference. In either case, Plaintiff was plainly aware that a patent application was being prepared sufficient to indicate that her rights may be involved.

Furthermore, Plaintiff testified that her former attorney, Luba Czura, raised the patent as an issue that needed to be resolved:

> Q: And after you left [NetOffice in 1996], you hired two different lawyers to pursue claims against Mr. Bobo, right?
>
> A: Yes.
>
> Q: And did one or both of those lawyers bring up the patent as an issue that needed to be resolved?
>
> A: Yes. Luba Czura brought it up.

(Huster Dep. I at 243:17–22.) During Huster's unrelated litigation with Bobo, Huster and her attorney, Luba Czura, created a bullet list of Huster's contributions to NetOffice. (Id. at 260:3–15 (referred to as "Exhibit ZZZ").) The bullet list was dated May 6, 1996. (Id. at 4:21.) Huster testified that, although the patent was not originally included in the bullet list, Luba Czura did send something to Bobo and his attorney regarding Huster's contribution to the patent. (Id. at 260:16–261:19.) The purpose of the list was "to create a record that [her] contributions to NetOffice warranted the payment that [she was] seeking." (Id. at 261:8–11.) Plaintiff makes no mention of this testimony in her supplemental response.

Within Exhibit ZZZ, there is also a reference to the fact that Huster did not sign an employment agreement "because she incessantly requested Mr. Bobo to assign the patent over to NetOffice." (Id. at 262:9–17.) Plaintiff explained that Luba Czura added this reference

> because I didn't want to talk about the patent.  I was afraid—I thought I had rights to the patent potentially. And I was afraid of talking about it with Charles [Bobo], that it would like stir the hornet's nest, but she wanted to put it in there. So I very much remember, she—her adding that.

(Id. at 262:21–263:3.) Later in the deposition, Huster testified that she "believed [she] had a right in the patent application" at the time the bullet list was sent to NetOffice. (Id. at 265:3–17.)

Huster's only attempt at rebutting her own testimony is to state, without citation, that "it is well known that one can assign rights to a patent or patent application before a patent application is filed or a patent is issued." (Doc. No. 169 at 2.)  Additionally, Plaintiff emphasizes that, in her deposition, she testified that the first she learned that a patent application had been filed was in 2010. (Huster Dep. II at 90:16–19.) However, Huster has failed to rebut her testimony that she believed she had rights to the patent in 1996.

Next, Defendant cites to a number of documents sent to and from Huster in the mid-1990's to demonstrate that she was aware of the patent:

- A letter dated June 8, 1995, from Mr. Sutcliffe to Huster, with the subject line addressing a patent filed April 28, 1995 (Doc. No. 155-4);

- A fax dated October 23, 1995, from Mr. Sutcliffe to Huster, attaching a draft assignment of the patent application from Bobo to NetOffice. (Doc. No. 155-5);

As it pertains to these documents, Huster maintains that she never received them.

(Doc. No. 169 at 2 (citing Huster Dep. II at 151:20–24 & 176:3–13).)

- A fax dated November 20, 1995, from Huster to Mr. Sutcliffe, with an attached letter detailing that another company was infringing on the patent filed in April (Doc. No. 155-7);

- A fax dated December 6, 1995, from Huster to Mr. Sutcliffe, including an expedite form, a phone conversation with the patent office, and a claim comparison (Doc. No. 155-8).

As to these documents, Huster alleges, in conclusory fashion, that she "believes that the documents are fabricated." (Doc. No. 169 at 3.) Such a contention, she argues, is not difficult to believe because this Court previously denied Bobo's motion to dismiss for failure to state a claim. (Id.)

While addressing the motions to dismiss, the Court passed no judgment on Plaintiff's likelihood of success. Rather, the Court accepted as true all factual allegations in the complaint and made a determination as to whether, if proven, Plaintiff could state a claim. The Court's ruling cannot be used as support on a motion for summary judgment. Because Defendant presented sufficient evidence that the statutes of limitations have run, the onus is now on Plaintiff to "come

forward with some evidence to demonstrate on motion for summary judgment that some evidence exists to create a material issue of fact that the statute has been tolled for jury determination." Douglas Kohoutek, Ltd. v. Hartley, Rowe & Fowler, P.C., 543 S.E.2d 406, 407 (Ga. Ct. App. 2000); Royal v. N.Y. Life Ins. Co., No. 6:10-cv-104, 2015 WL 339781, at *24 (S.D. Ga. Jan. 26, 2015). This she has not done.

Indeed, even accepting each of her challenges to the documentary evidence, there is sufficient evidence on the record to establish as a matter of law that Defendant's omissions did not "debar or deter" Huster from bringing suit.[4] Looking to Huster's sworn deposition testimony, it is clear that Huster, while perhaps not well versed on patent law, was fully aware that she had rights in the patent in 1996. She testified that she "thought [she] had rights to the patent potentially" but avoided asserting those rights because she "was afraid of talking about it with [Bobo.]" (Huster Dep. I at 262:24–25; see also id. at 265:15–17 (responding in the affirmative to the question "[Y]ou believed you had a right in the patent application at that point, correct?").)

---

[4]    By making such an assumption, the Court in no way accepts Plaintiff's allegations of forgery as fact. Plaintiff's accusation is entirely speculative based on her testimony that she could not recall if she authored a couple of documents. (See Huster Dep. II at 170:1–171:9.) The Court simply demonstrates that any dispute as to the authenticity of these documents is immaterial, as there is ample evidence not in dispute to support Huster's knowledge of her rights in the patent.

Finally, the Court turns to a document authored by Huster.[5] In that document, Huster has created a chart cataloging evidence in her case, as well as a "Timeline of Invention." In this document, Huster references a letter to attorney Chuck Beaudrot dated June 7, 1997. (Doc. No. 159-7 at 12.) In her notes regarding this letter, Huster writes "original patent filed under Charles Bobo but the lawfirm paid by NetOffice, Inc." (Id.)

Therefore, the Court finds that it was not an omission or fraud on the part of Bobo that led Huster to sit on her claims. See Columbia Cty. v. Branton, 695 S.E.2d 674, 678 (Ga. Ct. App. 2010) (finding that the plaintiff failed to meet his burden to establish tolling because he "was aware of the facts that he contend[ed] gave rise to his claims despite the county defendants' alleged fraud"). Rather, Huster (1) was aware that a patent application was being processed; (2) was aware that she had rights to the patent; and (3) testified that she did not pursue her rights because she was afraid of Bobo.

Nor is the Court persuaded that Plaintiff's alleged confidential relationship would excuse any knowledge of her rights in the patent. The Georgia Supreme Court has dismissed such an argument. Hunter Maclean, Exley & Dunn, 507 S.E.2d at 415 ("Under the inaccurate reasoning that a confidential relationship

---

[5] In briefing for a previously ruled upon Emergency Motion for Disqualification, Defendants referenced this document as one created by Huster. Huster did not challenge the authenticity of this document. Throughout the document, Huster uses the first person to describe a number of issues with NetOffice. (See Doc. No. 159-7 at 7.)

alone is sufficient to toll the limitations period in malpractice cases, the statute would be tolled indefinitely, so long as the confidential relationship continued— even if the plaintiff was fully aware of the facts underlying his allegation of malpractice, but merely slept on his right to bring suit."). Moreover, any confidential relationship that existed at the time of the alleged omission clearly dissipated in a matter of months. The Court thus finds that Plaintiff's knowledge of her cause of action entitles Defendant Bobo to summary judgment.

## C.   Reasonable Diligence

Defendant finally argues that Huster has failed to demonstrate that she acted with reasonable diligence to discover the cause of action. In support, Defendant cites Huster's deposition testimony that she considers herself an Internet guru and that she was aware how to find patents on the Internet through simple searches. (Huster Dep. II at 33:25-34:7 & 84:22-85:5, Doc. No. 155-3.) Failure to conduct any such searches in the fifteen years after she knew the patents were being processed, Defendant argues, cannot constitute reasonable diligence. Plaintiff argues that she trusted Bobo to inform her of any filings regarding the patent. (Doc. No. 147 at 7.) Stated differently, she contends that the confidential relationship that allegedly existed relieved her of any obligation to discover her cause of action.

Similar to the standards noted above, "[t]he failure to use reasonable diligence may be excused . . . where there exists some relation of trust and confidence between the party committing the fraud and the party who is affected by it." Garland, 86 F. Supp. 2d at 1208 (internal quotations and alterations omitted). However, a confidential relationship merely lessens any duty of diligence. It does not negate the requirement altogether. Godwin v. Mizpah Farms, LLLP, 766 S.E.2d 497, 506 (Ga. Ct. App. 2014) (a confidential relationship "affects *only the extent of* . . . the plaintiff's corresponding obligation to discover the fraud for herself" (internal quotations omitted and emphasis added)).

In the face of Defendant's evidence (i.e., Plaintiff's own testimony) that she previously used simple Internet searches to research patent filings, Plaintiff has presented absolutely no evidence of diligence on her part in discovering her cause of action, even if considered under the lessened standard.

Moreover, and despite Huster's argument to the contrary, the facts show that Plaintiff did not trust Bobo as early as June 8, 1995, which was just a month and a half after the patent application was filed. (Huster Dep. I at 155:13 & 156:6–9.) Indeed, Huster repeatedly testified about how she did not trust Bobo. On these facts, Huster certainly would have been under an obligation to exercise *some* degree of diligence in discovering her cause of action. Plaintiff has not referenced any case holding that the confidential relationship shall continue in perpetuity,

14

particularly where the evidence clearly demonstrates that the plaintiff no longer trusted the defendant. Accordingly, the Court finds that Plaintiff has also failed to demonstrate that she acted with any degree of diligence, as is required to toll the statutes of limitations.

Based on the foregoing, the Court concludes that the applicable statutes of limitations bar all of Plaintiff's remaining claims against the sole remaining Defendant in this action. Further, the Court concludes that Plaintiff has failed to meet her burden of proving that fraud exists sufficient to toll the statutes of limitations.

### III.   CONCLUSION

The Court **GRANTS** Defendant's Motions to Dismiss (Doc. Nos. 135 & 137), which have been converted to Motions for Summary Judgment. The Court **DIRECTS** the Clerk to **CLOSE** this case.

**SO ORDERED**, this 28th day of January, 2016.


ELEANOR L. ROSS
UNITED STATES DISTRICT JUDGE